SCHEEL v. ALHAMBRA MIN. CO.

(Circuit Court, D. Nevada. April 5, 1897.)

No. 596.

MINES AND MINING—CONVEYANCE OF TUNNEL RIGHT—APPURTENANCES.
    The grant of a tunnel right through a specific piece of ground, "together with all and singular the appurtenances thereto belonging," carries with it by implication every incident and appurtenant thereto, including the right to dump the waste rock at the mouth of the tunnel on the land owned by the grantors at the time of the conveyance of the tunnel right.

This is a bill in equity to quiet title to the Metropolitan mine and mining claims, owned by the plaintiff. The suit was commenced in the state court, and thereafter removed to this court, on motion of defendant, upon the ground of diversity of citizenship of the parties.

The bill, as reformed in this court, charges that defendant, in running a tunnel through and near plaintiff's mine, wrongfully and unlawfully, without plaintiff's consent, dumped and deposited waste rock and earth from said tunnel upon plaintiff's claim; that defendant claims an estate and interest in the Metropolitan mine adversely to plaintiff, viz. an easement and servitude therein, and the right to dump waste rock thereon; that said claim is false and invalid, and casts a cloud upon plaintiff's title thereto. The defendant, in its answer, "alleges that whatever right, title, or interest plaintiff may have in said Metropolitan claim is subject to the right of defendant to run, maintain, and work said tunnel, and to the right of defendant to dump waste rock on said Metropolitan claim." It bases its right to use the land owned by plaintiff at the mouth of the tunnel, upon the ground that it is, and ever since 1873 has been, the owner of, in possession of, and entitled to the possession of the mining claim and premises known as the "Alhambra Mining Claim," together with the tunnel mentioned in the complaint, "with the right to dump ore and waste rock upon the surface of the Metropolitan mining claim"; that said tunnel, when commenced, at the mouth thereof, was upon vacant and unoccupied public mineral land; that on April 6, 1887, its predecessor in interest and grantor located a tunnel right and location under the provisions of section 2323 of the Revised Statutes, commencing at the mouth of the tunnel, described in the complaint, and running through the Metropolitan claim into, along, and upon the ground of the Alhambra claim; that said location was made with the knowledge of said plaintiff and his grantor; that defendant and its predecessor in interest ran said tunnel upon said tunnel right and location, and fully complied with the mining laws in regard thereto; that long prior to the commencement of this suit the plaintiff and his grantor, for a valuable consideration, sold and conveyed to the defendant the land through which the tunnel runs. The evidence shows that on June 30, 1874, Herman J. T. Scheel (plaintiff's father) obtained a patent to the Metropolitan lode claim; that on February 23, 1887, he conveyed his title to said lode claim to his son, Herman B. J. Scheel, the plaintiff herein; that plaintiff holds the legal title to said lode claim, except as to such portions of the surface ground which; on

April 4, 1888, were conveyed by deed to the defendant. The land conveyed is described in the deed as follows: "That piece or strip of land twenty (20) feet wide, commencing at the mouth of the tunnel location of John O. Strauch, and running thence west 184 feet, more or less, to the east line of the Alhambra Mining Company's land, and situated on the ground of the Metropolitan Mining Company; * * * the same being the land through the center of which said tunnel of John O. Strauch has been run. Nevertheless, I hereby reserve to myself (ourselves) the right to use said tunnel to work our own mines. * * * We also bargain and sell, convey and confirm, to said second party, its successors and assigns, forever, a right of way twenty (20) feet wide over the said lands of said Metropolitan Mining Company from the mouth of the said tunnel location of John O. Strauch to the county road; the said right of way being over the road now used by them in going to and returning from said tunnel. It is further hereby agreed that the party of the second part does not claim any ore in the ground hereby conveyed, and the conveyance hereby made only conveys the surface ground and the tunnel." On February 6, 1874, the defendant obtained from the United States a patent to the Alhambra lode, situate west of and adjoining the ground of the Metropolitan lode, for 2,000 feet in length. Four hundred and fifty feet of this ground on the Alhambra lode was afterwards conveyed to H. J. T. Scheel, and designated as the "Segregated Alhambra." On February 6, 1887, John O. Strauch, who is, and for the past 15 years has been, the president of the defendant, located a tunnel right running though the ground of the Metropolitan Mining Company, claiming "all veins or lodes within 3,000 feet from the face of said tunnel on the line thereof, not previously known to exist, which are or may be discovered in said tunnel." This tunnel right and location was, on April 4, 1888, conveyed by Strauch to the defendant. The tunnel passes through the ground of the Metropolitan Company into the ground of the Alhambra Company. It was run a distance of about 1,012 feet before the location of the Alhambra lode, and has since been extended a distance of nearly 500 feet. Drifts have been run from the tunnel a distance of between 700 and 800 feet. The waste rock and earth from these drifts were dumped on the Metropolitan ground at the mouth of the tunnel. The dump is about 200 feet long, 80 feet wide, and 30 feet deep. At the close of the testimony, the defendant, by leave of the court, amended its answer so as to conform to the proofs, by adding the following averments: "Defendant alleges that the tunnel mentioned in said bill of complaint was commenced by said defendant prior to the year 1873, under the direction and supervision of Herman J. T. Scheel, the predecessor in interest and grantor of the plaintiff in this action, to the Metropolitan mining claim described in said bill of complaint, and was continued and constructed under said plaintiff's predecessor in interest and grantor until he conveyed said Metropolitan claim to said plaintiff; and after such conveyance said tunnel was continued and constructed by said defendant under the supervision and direction of said plaintiff for said defendant until the year 1894; and that from the year 1873 to the year 1894 said defendant expended in the construction of said tunnel the sum of over ten thousand dollars, and during the whole of said time said defendant, under the direction of said plaintiff and his said grantor, dumped the waste rock from said tunnel upon said Metropolitan claim. Defendant further alleges that by reason of the premises said plaintiff is estopped from denying defendant's right to run said tunnel and dump waste rock therefrom upon said Metropolitan mining claim." The evidence given at the trial fully sustains the averment of facts set out in this answer. It shows that the plaintiff never made any objection to the use of the dump by the defendant until 1894, when a dispute arose between the parties about a claim presented by the plaintiff for services which the defendant refused to pay. This suit was commenced June 6, 1894.

Robert M. Clarke, for plaintiff.

W. E. F. Deal, for defendant.

HAWLEY, District Judge (orally).    Did the right to use the surface ground at the mouth of the tunnel as a dump pass by the con-

veyance from the plaintiff to the defendant of the tunnel right as an incident or appurtenant to the land conveyed? The deed was a bargain and sale deed. It granted, bargained, sold, and conveyed the premises described in the statement of facts, "together with all and singular the * * * appurtenances thereto belonging." The conveyance of the land through which the tunnel runs would be of but little, if any, value without the use of the surface ground at the mouth thereof as a dump. In fact, the tunnel could not be successfully run for the purposes for which it was located and constructed without such right or privilege. A deed in general terms passes everything which is a constituent part of the land granted. Was the right to dump the waste rock on the plaintiff's land an incident or appurtenant to the use and occupancy of the tunnel? The word "appurtenances," in common parlance and legal acceptation, is used to signify something belonging to another thing as principal, and which passes as incident to the principal thing. 1 Bouv. Law Dict. "A right annexed to land is appurtenant where the connection has arisen either by grant or by prescription from long adverse enjoyment. In such a case the appurtenant thing passes with the thing to which it is annexed whenever a conveyance or transmission of the latter takes place." 1 Rap. & L. Law Dict. An easement is defined to be "a liberty, privilege, or advantage which one man may have in the lands of another, without profit. It may arise by deed or prescription." 1 Bouv. Law Dict. In construing the deed in question, it is the duty of the court to take into consideration the situation of the land, the circumstances attendant upon the location of the tunnel right, the object and purpose for which it was acquired, how used, the particular situation of the parties, their knowledge of the character of work to be done in the tunnel, the necessities which existed, if any, of having a right to store the waste rock and earth upon the adjacent land at the mouth of the tunnel, and the acts and conduct of all the parties in relation thereto, in order to arrive at the intent of the parties in conveying the land through which the tunnel runs. The plaintiff reserved the right to use the tunnel for the purpose of working the Metropolitan mine. In the working of the mines in question either by the plaintiff or the defendant, in extracting and removing the pay ore therefrom through the tunnel, there would naturally arise a necessity of making some disposition of the waste rock and earth that had to be removed in the prosecution of the work. The result was that the surface ground at the mouth of the tunnel was used as a dump for that purpose. At the time the conveyance was executed, and for many years prior thereto, Herman J. T. Scheel (the father) was engaged in running the tunnel for the defendant, and under his direction the waste rock and earth were deposited at the mouth of the tunnel on land to which, at the time he held the legal title. The same condition of affairs existed afterwards, continuously, either under the direction of the father or Herman B. J. Scheel, the son, until 1894. From the beginning of the first work in the tunnel up to the time this case was tried the ground in question was used as appurtenant to the tunnel, and its use was necessarily incident to the full enjoyment of the tunnel for the purposes for which it was constructed and used. There are many things

which pass by a conveyance of land as appurtenant or incident thereto although not expressly named in the deed. If the description in the deed does not mention the things claimed as appurtenant, the same will be held to pass by the deed, if it clearly appears from all the transactions between the parties, and the circumstances and conditions of the property and of the use and enjoyment of the same, that the things not so mentioned are necessarily incident thereto.

In Bank v. Miller, 6 Fed. 545, 551, Judge Deady said:

"That a sale of any real property carries with it any easement or privilege which is necessary to its enjoyment, and at the time is in use thereon and therewith, as an appurtenance in fact, although not technically so at law; and this upon the presumption, more or less cogent, according to the circumstances, that it was the intention of the parties to the agreement of sale that it should pass with the property to which it was then apparently subservient."

In Insurance Co. v. Patterson, 103 Ind. 582, 586, 2 N. E. 188, 191, the court said:

"Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made."

In U. S. v. Appleton, 1 Sumn. 492, Fed. Cas. No. 14,463, the court held that, where a house or store is conveyed by the owner thereof, everything passes which belongs to, and is in use for, the house or store, as an incident or appurtenance. Mr. Justice Story, in his opinion, said that this rule "is implied from the nature of the grant, unless it contains some restriction, that the grantee shall possess the house in the manner, and with the same beneficial rights, as were then in use and belonged to it. The question does not turn upon any point as to the extinguishment of any pre-existing rights by unity of possession, but it is strictly a question what passes by the grant."

In Voorhees v. Burchard, 55 N. Y. 98, 102, the land conveyed was designated as "being the mill property of the said Ransom Rathbone in the village of Rathboneville," then giving metes and bounds, embracing 7.9 acres of land, with appurtenances. It was shown by the evidence that in front of the mills was an open space, extending to the highway, containing 62 rods of land, which was the locus in quo in the action of trespass brought by the plaintiff, and was not included within the boundaries of the deed, but had been used as a mill yard for the deposit of logs and lumber sawed at the mill for 25 years by Ransom Rathbone prior to his conveyance. The trespass complained of was the deposit of saw logs on the open space in front of the mills. It was shown that the entire use of this mill yard was necessary to the beneficial enjoyment of the mills. The court held that, upon the facts, an easement in the locus in quo for a way and for a mill yard was carried with the principal thing conveyed, and, among other things, said:

"But the controlling thing is this: How much and what was necessary for the mill? the actual use by the successive owners being evidence of this. * * * It is the necessity of the mill for its full and free enjoymen which controls in indicating what and how much shall pass as an incident appurtenant to that in terms conveyed."

A tunnel right through a specific piece of ground is a right to enter upon and occupy the ground for the purpose of prosecuting work in the tunnel, and to extract therefrom waste rock or earth necessary to complete the running of the tunnel, and making such use thereof, after completion, as may be necessary to work the mining ground or lode owned by the party running the tunnel. By implication the grant of such a right carries with it every incident and appurtenant thereto, including the right to dump the waste rock at the mouth of the tunnel on the land owned by the grantors at the time of the conveyance of the tunnel right, such right or easement being necessary for the full and free enjoyment of the tunnel right.

The views herein expressed, and conclusions reached, are sustained by the following additional authorities: Sparks v. Hess, 15 Cal. 187, 196; Cave v. Crafts, 53 Cal. 135, 138; Farmer v. Water Co., 56 Cal. 11, 13; Smith v. Cooley, 65 Cal. 46, 48, 2 Pac. 880; Jackson v. Trullinger, 9 Or. 393, 398; Scott v. Michael, 129 Ind. 250, 254, 28 N. E. 546; Coolidge v. Hager, 43 Vt. 9, 14; New-Ipswich W. L. Factory v. Batchelder, 3 N. H. 190; Lampman v. Milks, 21 N. Y. 505; Ward v. Warren, 82 N. Y. 265, 268; Holloway v. Southmayd, 139 N. Y. 390, 402, 34 N. E. 1047, 1052; Witte v. Quinn, 38 Mo. App. 682, 692; Bowling v. Burton, 101 N. C. 176, 180, 7 S. E. 701; Gurney v. Ford, 2 Allen, 576; Ammidown v. Ball, 8 Allen, 293. It is therefore unnecessary to consider any of the questions upon the other points raised by the pleadings, and especially upon the point as to whether or not an estoppel was properly pleaded or proved. The evidence which was objected to, as to its insufficiency to establish an estoppel, was properly admitted in evidence as tending to show the situation of the land, and the conduct of the parties, and as bearing upon the question of their intentions at the time the conveyance of the tunnel right was executed; and it matters not whether it was sufficient for the purpose of establishing an estoppel, as the points discussed are absolutely conclusive as to the rights of the parties. The plaintiff has the legal title to the land covered by the dump at the mouth of the tunnel, which is the locus in quo in controversy; but he holds such title subject to an easement and right of way of the defendant to use said land, and so much thereof, and no more, as may be necessary for a dump, with the right to deposit any and all waste rock and earth conveyed through the tunnel owned by the defendant. A decree will be entered in accordance with the views expressed in this opinion.