Wilson, J.
This is an action in which the appellant seeks to enforce a mechanic’s lien for work and labor done upon and materials furnished for the erection of certain mill improvements upon certain mining claims and a mill site owned by the appellees. In order to a proper understanding of the issues, a somewhat lengthy statement of the facts is required. About August 21, 1894, appellees entered into a contract in writing with one W. A. Clark for the sale of the property in controversy for the sum of $65,000, to be paid at certain specified periods. The contract was in the first instance in the nature of a grant of an option to purchase but by its terms became operative, when the first payment should be made, as an absolute contract of sale. One provision of this contract was that at the time of the second payrnent on the purchase price, “ ten thousand dollars additional shall be paid or secured to be paid to the purchasing company, which ten thousand dollars shall be expended in the erection of ten additional stamps to the mill, and the construction of a tramway from the river to the mill, and the balance of said ten thousand dollars shall be set apart as a working capital to be used in the development and operation of the property.” It was also provided in this contract that after Clark or his assigns had paid the sum of $20,000 on the purchase money, and after the further sum of $10,000 had been paid or secured to be paid as provided above, a lease in addition to the contract of sale was to be executed and delivered to the said Clark or his assigns. It was also further agreed that Mr. Robert Billings, or such other person as might be mutually agreed upon between the parties, should act as reponsible manager of the mines and mill. Clark assigned a one-half interest in this contract to Billings, and failing to comply with his contract, Billings elected to proceed thereunder alone. In pursuance of this, on October 2, 1894, a second contract was entered into be *453 tween the appellees and Billings, which was declared, however, by its terms to he only supplemental to and in explanation of the first contract. This last contract provides for the sale of the property to Billings for the same sum as was specified in the Clark contract, to be paid in specified amounts at certain periods, and further provided that moneys expended by said Billings “ in the erection of ten stamps or other improvements upon the mill prior to the expiration of sixty days from this date, shall he computed as part of the ten thousand dollars to he paid or secured within that time for the purposes aforesaid, hut in lieu of the ten stamps, equivalent machinery for reduction may he erected.” On the same day, appellees executed a deed conveying all of the property to said Billings, which was placed in escrow under an escrow agreement which provided among other things that “the said Billings shall within said time (sixty days) pay or cause to be secured to the person or company purchasing said property, the further sum of ten thousand dollars, to be applied to the erection of ten additional stamps, or their equivalent, in said mill. * * * Provided, however, that moneys expended within said sixty days in such additional machinery to said mill, shall he taken and computed .to he a part of said sum of ten thousand dollars.” The escrow agreement also provided that “in case of failure to pay or deposit the sum of fifteen thousand dollars within sixty days from this date, or to pay or secure the further sum of ten thousand dollars hi manner aforesaid within said time, the said deed shall on demand be surrendered to said Taylor and Leonard.” Under these, contracts, Billings paid appellees within the proper time $5,000. Afterwards, he assigned the contracts to the Allegheny Gold Mining and Milling Company, which paid appellees the further sum of $15,000, making the completed $20,000 payment, and on or about November 15, 1894, appellees in pursuance of their agreements delivered the possession of the premises to the said Allegheny company, assignee of said Billings. On this same date, being within sixty days from the date of the last agreement with Billings *454 above mentioned, the Allegheny company entered into a contract with appellant to erect the additional stamps and make the additional improvements upon the mill, in pursuance, as it was claimed, of the contracts above mentioned. The contract was completed by appellant, and within the statutory time it filed a statement of claim of lien. The notice of intention to claim the lien as required by subdivision 4 of section 8 of the mechanic’s lien act, Laws of 1893, was entitled as follows : “ Notice of Intention to file statement of Mechanics Lien claim. The Allegheny Mining and Milling Company, et al. owner. Colorado Iron Works, claimant.
“ To The Allegheny Gold Mining and Milling Company, W. A. Taylor, and John Leonard, and Robert Billings, owners of the following described lots or parcels of land situate in the county of San Miguel.” Here followed a description of the property which it was sought to charge with the lien, and then concluded: “You are hereby notified of our intention to file a statement of mechanic’s lien upon the above described property, on account of work done, and mill machinery and other material furnished at the request of The Allegheny Gold Mining and Milling Company, of the value of 14,472.10 ( dollars of which has been paid,) for the construction of the structure, building and improvement now situate upon said premises.” This was signed by appellant. More than twenty-four hours before the filing of the lien statement, this notice was personally served upon H. A. McIntyre, secretary and treasurer of the Allegheny Gold Mining and Milling Company, and upon Robert Billings. It was not served upon appellees, or either of them. Upon trial, the court fpund that the contracts considered as a whole constituted a contract or agreement of sale; that by their terms the appellees authorized and required the erection of the improvements which were made upon the property, and that the interest of the appellees would be bound, provided that the provisions of the lien act had been complied with. It further found, however, that this notice of intention to claim a lien was *455 defective and insufficient, and that by reason of this, together with the failure to serve notice upon appellees, their interest in the property could not be charged with the lien. A decree was entered accordingly, and from this an appeal is had to this court.
Appellees have assigned no cross-error, and having made no objection, nor taken exception to any of the findings of the court, it will be seen that the sole question before us for determination is the finding of the court that a lien could not attach to the interest of the appellees because of some material defect in or want of service upon them of the notice of intention to claim a lien. In this view of the case, it is unnecessary for us to discuss or advert to the other findings of the court, except so far as they bear upon the determination of the precise question at issue. We simply content ourselves with stating that such other findings of fact by the court and its conclusions of law thereupon, were correct. Although the legal title to the property still remained in appellees, the improvements and work and labor for which the lien was sought were done and made under a contract of sale of the property, by the terms of which the improvements were expressly authorized and required. The findings of the court, and conclusion of law thereon, to the effect that the interest of appellees in the property was subject to a lien for the improvements in question were correct. This conclusion, however, must be based upon the theory that for the purpose of erecting these improvements, the Allegheny Company was the agent of appellees. This doctrine that the interest of the vendor in such cases becomes subject to the liens of those furnishing labor and material for the erection of improvements under a contract of sale, is well settled by a great weight of authority. Shapleigh v. Hull, 21 Colo. 419; Henderson et al. v. Connelly, 123 Ill. 98; Davis v. Humphries, 112 Mass. 309; Hill et al. v. Gill et al., 40 Minn. 441; Bohn Mfg. Co. et al. v. Kountze, 30 Neb. 719; Moore v. Jackson, 49 Cal. 109; Paulsen v. Manske, 126 Ill. 72; O'Leary v. Poe, 45 Mo. App. 567; Boisot on Mechanics’ Liens, § 300, et seq. ; *456 Phillips on Mechanics’ Liens, § 69. An effort is made to distinguish this case from that of Shapleigh v. Hull on the ground that the contract in the latter case was an absolute contract of sale, which positively required the erection of certain improvements, whilst in this case it is contended, the contract was simply an option to purchase, which the party might or might not exercise at his election. It is true that in the beginning, before any payments were made, the contract with Clark was simply an option to purchase, but it is equally clear, by the very terms of this and the subsequent contracts based upon it, that when the first payment was made, it was an exercise of this option to purchase by Clark or his assigns who made the payment, and that thereafter the contract became a positive agreement of sale, one of the conditions of which was that these improvements should be made. It is true that the agreement might be defeated and fall by reason of a failure to comply with its terms in the making of payments, but this was equally so in the ease of Shapleigh v. Hull. A slight reference to the agreement made with Billings on the 2d day of October, 1894, at the time when he made the $5,000 payment, and when the deed to the property was placed in escrow, will show that this conclusion is undoubtedly correct. It recites, after referring to the execution of the original agreement with Clark, giving him an option to purchase, that “ Whereas, the said W. A. Clark on the same day assigned to the said Robert Billings an equal undivided half interest in the said option, all which will more particularly appear by the record of said agreement and of said assignment in the office of the recorder of the said county of San Miguel.
“Whereas, the said Clark having afterwards refused to make the purchase of said premises pursuant to said option and renounced said option, the said Billings hath elected to proceed with the purchase of said premises under said option pursuant to the terms thereof,” etc. Here it will be seen that the parties expressly designate the first agreement as an option to purchase, but also state that Clark had refused to *457 exercise his option, and that Billings had elected to proceed with the purchase of said premises under said option, pursuant to its terms, that is to say, Billings stepping into the shoes of Clark, had exercised his option and agreed to purchase, and consummated such agreement by making the first payment according to the terms of the sale. We think no other construction can reasonably be placed upon the contracts than that after this payment by Billings, they were positive contracts of sale, one of the terms of which and equally as binding as those requiring the payment of specific sums of money, was that these mill improvements should be made.
This being true, we think that the learned judge was in error in holding that there was not proper service of notice of intention to claim a lien by the appellant. The Allegheny Company being the express agent of appellees for the erection of these improvements, service upon it was service upon the appellees, the owners of the property. This is within a fundamental principle of the law of agency, that notice to an agent, if it concerns a matter within the scope of the agent’s authority and is received during the continuance of the agency, is notice to the principal, the reason of the rule being that for the purpose of the transaction, the two, principal and agent, are identical. Mechem on Agency, § 718; Wade on Notice, §673a.
This is the general rule independent of any statute, but in the present case, the statute by which the rights of the parties to this action must be controlled, expressly provides that the notice in question may be given to the agent of the owner. Laws, 1893, see. 3, p. 318. It being held in this case that the Allegheny Company was the express agent of appellees for the erection of the improvements in question, it is unnecessary to discuss the question raised in the trial court as to the proper construction of section 1 of the lien act of 1893, in respect to its designation of those who shall be held to be the agents of the owner for the purpose of this act. Whether or not the language of this section expressly creates a statutory agent which is the same agent designated by section 3, *458 upon whom notice of intention to claim a lien may be served, it is unnecessary to determine. Conceding the contention of appellees that it does not, yet the facts in this case constitute the Allegheny Company, as we have said, such an express agent, for the express purpose of making these improvements, that it unquestionably comes within the term agent as used in section 3, in whatever restricted and limited sense it may be there employed.
Nor do we think that there is any merit or force in the objections of appellees as to the form of this notice of intention. The statute specifies no particular form. It merely requires that written notice of the intention to file such a statement of lien must be given to the owner, his agent or architect. The pith and gist of the statutory requirement is that the owner shall have notice, either by service upon himself directly, or upon his agent or architect, who represents him, that the lien claimant intends to file a statement of lien against his property. It need not be formally addressed to • any one, and this being true, an error in the address, if there is one, is immaterial. If the notice should be addressed to the agent as owner, it would by no means vitiate the notice. The object of the statute would be fulfilled, the proper party would have received notice of the fact, which was all that the statute required. Phillips on Mechanics’ Liens, §367; Shaw v. Bryan, 39 Mo. App. 526.
We therefore conclude that the notice of intention served in this case was a sufficient compliance with the statute, so as to bind appellees, the owners of the property. It would follow from this, the trial court having found all other facts in favor of the appellant, that it would be entitled to a decree for the enforcement of its lien against the interest of appellees in the property involved.
It is urged, however, that even if it be held that the notice of intention was properly served, and was sufficient to comply with the statute as to the appellees, the owners of the property, yet appellant should not have a decree for the enforcement of its lien, because it did not allege in its com *459 plaint, nor was it shown by the evidence, that Billings or the Allegheny Company had not prior to making the contracts with the appellant for the improvements in question, already expended the full amount of the $10,000 authorized to be devoted to that purpose. In other words, it is intended to claim that the contract of sale required as one of its conditions, the expenditure of only $10,000 or less for improvements of the character in question, and that therefore if the Allegheny Company or Billings had already expended this amount before making these improvements, then these improvements were not authorized by the appellees, and neither Billings nor the Allegheny Company could in such case be held to have been the agents of appellees in'making the contract with appellant. It may well be doubted whether this contention would avail appellees, even if it be true, but it is unnecessary for us to decide what would be the force and effect of such proof. It is only necessary for us to say, that it was matter of defense wholly, and if sought to be relied upon, should have been set up by the appellees. All that it was necessary for appellant to allege and show were the facts required by the lien statute. If the owners of the property in this case sought to escape liability by showing that their agents had exceeded the limits of their powers in making this contract with appellant, it was their duty to have averred and proved it.
This fully disposes of the case so far as concerns the right of appellant to a lien, and the light to have it enforced against the interest of appellees as well as the interest of Billings, and the Allegheny Company in the property. There remains however a further question, ivhich is material and which must be determined before a final decree can be entered in accordance with the instructions which we propose to give upon remanding the cause. The improvements for which appellant claims a lien seem to have consisted exclusively of the erection of a mill, and the furnishing of mill machineiy for the mill which was erected upon the mill site. It claims a lien, however, not only upon the mill site, but upon certain *460 lode mining claims which, belonged to appellees, and which were included within the contract of sale to Billings and the Allegheny Company. It is apparent from the evidence that the mill was erected for the purpose of working ores from these lode claims, but we do not believe, so far as we can gather the facts from the evidence preserved, that a lien under the statute can be made to extend to these lode claims. The statute provides that the lien shall extend to and cover so much of the lands whereon such building, structure or improvement shall be made as may be necessary for the convenient use and occupation of such building, structure, or improvement, and the same shall be subject to such lien. Laws, 1893, sec. 7, p. 320. It appears in this case that the mill site was a separate and distinct piece of realty, and whilst its profitable and successful enjoyment might measurably depend upon the production of the mines, still we do not think that this fact would bring these mining claims within the meaning of this statute. As appears in this case, the mill site alone is all of the land that would be necessary for the convenient use and occupation of the improvements erected by appellant. The lien therefore should extend to that only, and the improvements thereon situate.
This disposes of all that there is in this case, and we can see no reason for a new trial. The matters upon which the determination of the cause depends are documentary and undisputed, it being nowhere pretended that appellant did not make the improvements claimed, nor that they were not of the value charged. It will therefore be the order of this court that the judgment be reversed, and that the cause be remanded with instructions to the trial court to modify its decree so as to give to appellant a lien upon the title and interest of appellees, as well-as of the Allegheny Mining Company in the mill erected and repaired by appellant, the machinery therein, and the mill site upon which it is situate.

Reversed.