# PARK CITY MEAT COMPANY et al. v. COMSTOCK SILVER KING MINING COMPANY et al.

### No. 2009. Decided June 12, 1909 (103 Pac. 254).

1. MINES AND MINERALS—EASEMENTS. There was conveyed to a company owning claims the perpetual right to use adjoining tracts for a shaft and dumping grounds, and thereon it sunk a shaft and made necessary improvements therefor, and through it worked the claims as one mine. *Held*, that the right of the company therein was an easement, and that the improvements placed thereon, together with the tracts, constituted an appurtenance to the mine and claims. (Page 152.)

2. MECHANICS' LIENS—SUBSTANTIAL COMPLIANCE WITH STATUTES. Where there has been a substantial compliance with the statute creating a mechanic's lien, and the lien has in fact been established, the lien will not be defeated by mere technicalities or nice distinctions.[1] (Page 154.)

3. MECHANICS' LIENS—EXTENT—NECESSITY—QUESTION OF FACT. The question of how much land is necessary in the case of a mechanic's lien controlled by Comp. Laws 1907, section 1379, providing that the liens granted by the chapter shall extend to and cover so much of the land, whereon the building or improvements shall be made, as may be necessary for the convenient use and occupation of such building or improvement, is one of fact. (Page 158.)

4. JUDGMENT—COLLATERAL ATTACK. As against a collateral attack, whatever land the court may order sold in a mechanic's lien foreclosure suit must be deemed to have been necessary for the convenient use of the building on which the work was performed. (Page 159.)

5. MECHANICS' LIENS—EXTENT OF LIENS—NECESSARY APPURTENANCES. Necessary appurtenances, including an easement in land other than that on which the building stands, are covered by Comp. Laws 1907, section 1379, providing that the mechanics' liens granted by the chapter shall extend to and cover so much of the land whereon the building, structures, or improvements, on which the work was done, shall be made, as may be necessary for the convenient use of such building, struct-

---

[1] Lumber Co. v. Martin, 31 Utah 249, 87 Pac. 714.

ure, or improvement, and, in case such building shall occupy more than one lot, such lots shall be deemed one lot for the purposes of the chapter, and the same rule shall hold in case of any other such improvement that is practically indivisible, and "shall attach to all machinery and other fixtures used in connection with any such lands, buildings or structures." (Page 160.)

6. Mechanics' Liens—Notice of Intention to Claim—Description of Property. Necessary appurtenances, including an easement in land other than that on which the building stands, to which the lien for work on the building is extended by Comp. Laws 1907, section 1379, need not be mentioned in the notice of intention to claim a lien, which section 1386 provides shall contain a description of the property to be charged with the lien, sufficient for identification; but it is enough to describe the principal thing, the building, and the lot on which it stands. (Page 161.)

7. Mines and Minerals—Mining Claims. A mechanic's lien for work on a mill on mining claims is controlled by Comp. Laws 1907, section 1381, relative to liens for work on mining claims. (Page 161.)

8. Mines and Minerals—Liens—Statutes—Proviso. Comp. Laws 1907, section 1381, after creating a lien for work and material applied to the preservation or development of any lode, mine, or mining claim, concludes: "Provided that when two or more such lodes or deposits, owned or claimed by the same person or persons, or where the owners are different persons, and the same with consent of all shall be worked through a common shaft . . . then all . . . so worked shall, for the purpose of this chapter, be deemed one mine." *Held*, that what is termed a "proviso" is not really such, it not restricting or modifying only what is previously said in the section, but being intended to apply to the whole chapter, so that for the purpose of arriving at the true intention such proviso should be considered as a separate section, the mere fact of it being termed a proviso and appended to a particular section not being controlling.2   (Page 162.)

9. Mines and Minerals—Mines. Under the so-called "proviso" to Comp. Laws 1907, section 1381, for the purpose of acquiring mechanics' liens against mining claims where operated as a mine, the claims constituting the mine and all the property necessarily used and connected with the mine and mining claims, including an easement in adjoining lands, a necessary appurtenance to the mine, must be regarded as a unit, to all of which the lien attaches. (Page 162.)

2 Marioneaux v. Cutler, 32 Utah  480, 91 Pac. 355.

10. MINES AND MINERALS—MINES—NOTICE OF INTENTION TO CLAIM LIEN. In view of the so-called "proviso" to Comp. Laws 1907, section 1381, a notice of intention to claim a lien for work on a mill on several mining claims operated as a mine need only describe the mine as a whole, or refer to the claims by name or number, without referring to an easement in adjoining lands, a necessary appurtenance to the mine. (Page 162.)

11. MECHANICS' LIENS—DECREE—DESCRIPTION OF PROPERTY. The decree and order of sale in a mechanic's lien foreclosure should describe the property with such certainty as is ordinarily required in the execution of a deed. (Page 164.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Park City Meat Company and Robert W. Gillispie against Comstock Silver Mining Company, California Mining and Milling Company and H. A. McCornick. Judgment for defendants. Plaintiffs appeal.

AFFIRMED.

*Thurman, Wedgwood & Irvine* for appellants.

*Henderson, Pierce, Critchlow & Barrette* for respondents.

APPELLANT'S POINTS.

The real issue is—does a lienor acquire rights to lands and to buildings situate thereon, and machinery contained therein upon which he does not specifically claim a lien, and none of which are described or referred to in the claim of lien, on the ground that such land, buildings and machinery are appurtenances of the lands and premises actually described. Our contention is that he cannot. The rights of a lienor are strictly statutory and the rules of law applicable to grantor and grantee, in the conveyance of property do not apply. That is to say that a lienor does not stand in the same position as a grantee of real property under a formal conveyance. The mechanic's lien will not be ex-

tended beyond the letter of the statute. (*Brady v. Anderson,* 24 Ill. 110; *Stephens v. Holmes,* 64 Ill. 336; *Rothgarber v. Dupery, id.* 452.) Its privileges are *stricti juris* and the party claiming them must point to the express law giving him such right of preference on account of the nature of the debt. (*Landy v. Blanchard,* 16 La. Ann. 173.) It cannot be extended in its operations and effect beyond the fair and reasonable import of the words used. The plaintiffs asserting a lien must bring themselves within its terms, and the lien must be shown, not only to have been regular and valid in its inception, but to be a continuing and existing lien under the statute. (*Mushlitt v. Silverman,* 50 N. Y. 360; *Wagar v. Briscoe,* 38. Mich. 587.) Under our statute the notice of intention to hold and claim a lien must contain a description of the property to be charged with lien, sufficient for identification. (Compiled Laws 1907, sec. 1386.) It may be that the Mine & Smelter Supply Company might have acquired alien on the property in question, but the gist of this discussion is, did it?

RESPONDENT'S POINTS.

The right to occupy the surface of ground as a dump, and the right to construct a shaft and drifts running therefrom, to be used as a means of ingress and egress to the property of the Comstock Company are both easements. . (*Scheel v. Alhambra Min. Co.,* 79 Fed. 821; 3 Words and Phrases, Title "Easements;" *Law v. Streeter,* 9 L. R. A. 271; *Nichols v. Furniture Co.,* 59 N. W. 155.) The easements above noted belong to the mine and mining property which passed under the deed as the principal thing conveyed. They were incident to that, used with it, related to it, and dependent upon it, and therefore were appurtenant to the mine. (3 Cyc. of Law, 565; *Leonard v. White,* 7 Mass. 6; 5 Am. Dec. 1; *Scott v. Moore,* 81 Am. St. Rep. 749, note 764; *Carpenter v. Leonard,* 5 Minn. 155; *Doone v. Broadstreet Ass'n,* 6 Mass. 333; *Sheets v. Seldon's Lessee,* 2 Wall. 887; *Harris v. Elliott,* 10 Pet. 25; *Cap. City Gas Light Co. v. Charter*

*Oak Ins. Co.,* 51 Iowa 34; 2 Am. and Eng. Ency. 522;
*McDonald v. Minn. Lbr. Co.,* 9 N. W. 765; *McShane v.
Carter,* 80 Cal. 315; *Farmer v. Ukiah Water Co.,* 56 Colo.
11; *Dunklee v. Wilton R. R. Co.,* 24 N. H. 489; *Jarris v.
Seele Milling Co.,* 50 N. E. 1044.)

FRICK, J.

Appellants, in their complaint, after stating the necessary
matters of inducement, in substance, allege: That on the
19th day of February, 1906, each of them obtained a judg-
ment for specific amounts stated in the district court of
Summit County, Utah, against the respondent "Comstock Sil-
ver Mining Company, hereafter called "Comstock Com-
pany"; that thereafter, on the 10th day of April, 1906, ex-
ecutions were duly issued upon said judgments, which have
been returned wholly unsatisfied; that said Comstock Com-
pany has no property upon which an execution can be levied,
unless it is the owner of two certain parcels of mining
ground which are a part of what is known as the "White
Hawk mining claim," situated in said Summit County,
which parcels were, by said Comstock Company, used for
dumping purposes and for a shaft and shafthouse and hoist-
ing works with the machinery and appliances connected
therewith. The parcels of ground, which are described by
metes and bounds, are somewhat irregular in shape; one
being approximately 245 by 50 and the other 245 by about
100 feet, more or less. It is further alleged that the White
Hawk and Black Hawk mining claims are adjoining claims,
the north side line of the former being identical with the
south side line of the latter, and the two parcels of ground
each are within the boundaries of the White Hawk claim
adjoining the south boundary of the Black Hawk claim,
and thus connect with the last-named claim, and in effect
constitute an addition thereto.

It is further alleged. That said White Hawk mining
claim, as appears from the records of Summit County, stands
in the name of the respondent California Mining & Milling
Company, hereafter designated "California Company."

That in May, 1901, the respondent Comstock Company was the owner of the Comstock, the Black Hawk, the Intervention, and the Black Bear lode mining claims, all of the aforesaid mining claims being in Summit County, Utah, and that the California Company, at that time, was the owner of the aforesaid White Hawk lode mining claim, also in Summit County. That on or about the date last aforesaid, the said Comstock Company and said California Company entered into an agreement in writing in the form of a conveyance, whereby the said Comstock Company "became the owner forever to dig and sink a shaft upon the said White Hawk mining claim at the point where the shaft dug by said company then existed and now exists, and the perpetual right to the use of that portion of said White Hawk claim embraced within" the parcels of land above referred to for dumping purposes, "and also the right to occupy forever the ground then and now occupied by its shafthouse and hoisting works for such purposes." That said Comstock Company, in pursuance of said agreement, has occupied said ground, and has sunk thereon a deep shaft, and has constructed underground drifts therefrom into said Black Hawk mining claim, and has erected on said ground a shafthouse and placed therein hoisting machinery and the necessary fixtures and appliances in connection therewith for hoisting ore and waste from said mine through said drift and shaft, and has expended large sums of money thereon. "That on or about the 13th day of September, 1905, in the Circuit Court of the United States for the District of Utah, in an action then and there pending, in the nature of an action to foreclose a mechanic's lien, in which the Mine & Smelter Supply Company was plaintiff and the defendant herein the Comstock Company was defendant, a decree of foreclosure was duly made, rendered, and entered, wherein it was adjudged that the said Comstock Company was indebted to said Mine & Smelter Supply Company in the sum of $12,155.74, together with interest and costs; and also further adjudged that the said Black Hawk lode mining claim, lot No. 208, said Comstock lode mining claim, lot

207, the Intervention lode mining claim, lot 308, and the Black Bear lode mining claim, lot 309, together with a mill situate thereon and used in connection therewith, together with the tenements, hereditaments, and appurtenances thereunto belonging and in any wise appertaining, to be sold by S. H. Lewis, master in chancery of said court, for the purpose of satisfying the amount of said judgment, interest, costs, and accruing costs, and the same was by said master in chancery, on or about the —————— dav of ————, 1905, sold to said Mine & Smelter Supply Company. That the lien foreclosed in said action was claimed for material and machinery furnished in and about the construction of said mill." That a deed was duly issue by said master in chancery to said Mine & Smelter Supply Company for said mining claims and appurtenances, and said supply company thereafter duly sold and transferred said mining claims and the property acquired at said foreclosure sale to the respondent H. A. McCornick. That the Comstock Company claims "that all of its right, title, and ownership in and to any portion of the surface of said White Hawk mining claim for dumping purposes, and all its right, title, and interest in said White Hawk mining claim, in the nature of a right to sink and maintain a shaft thereon and drive drifts and tunnels therefrom, and to operate the same for mining purposes, and its right to erect thereon and maintain forever a shafthouse for hoisting purposes from said shaft, and that said shafthouse and fixtures therein and machinery used in connection therewith and in said shaft and said drifts therefrom, passed by reason of said master's deed to the said Mine & Smelter Supply Company," and from said company to said H. A. McCornick, who now claims to be the owner. The claims aforesaid are alleged to be wrongful and fraudulent, and it is alleged that the respondent Comstock Company is in fact the owner of said parcels of ground used for a shafthouse and appliances used in connection therewith, consisting of boilers, pumps, wire cables, mine cages, track rails in tunnel, blacksmith shop, and other fixtures. That the foregoing property is all the property now owned by said

Comstock Company; but, in view of the claims of the respondents, appellants cannot proceed in law to satisfy their judgments, wherefore appropriate relief in the premises is prayed for.

To this complaint the respondents Comstock Company and H. A. McCornick demurred generally. The demurrer was sustained by the district court, and the appellants, electing to stand on their complaint, the court entered judgment dismissing the action, and hence this appeal.

Referring to the brief of counsel for appellants, the question presented for decision, stated in their own language, is as follows: "The real issue is: does a lienor acquire rights to lands and to buildings situate thereon, and machinery contained therein, upon which he does not specifically claim a lien, and none of which are described or referred to in the claim of lien, on the ground that such land, buildings, and machinery are appurtenances of the lands and premises as actually described? Our contention is that he cannot."

It will be observed that there is nothing alleged in the complaint which sheds any light on what the notice of intention to claim a lien contained, nor how the property was described therein, nor what the scope of the claim was, except what is made to appear from the decree of foreclosure and the order directing a sale of the four mining claims therein described by name and number; nor is there anything indicating what allegations were contained in the complaint under which a foreclosure of the lien was asked, nor what proof, if any, was made to the court, nor what its findings were upon which the decree of foreclosure and order directing a sale of the mining claims and their appurtenances were based. All we have before us are the allegations of the complaint. Considering them as a whole, it may well be that the question whether the two parcels of ground with the fixtures thereon were included in the lien or not is not free from doubt nor difficulty; yet it is clear to us that, under the law, the right of the Comstock company in and to the two parcels of ground was but an easement, and that these two parcels, together with the im-

provements thereon, constituted a mere appurtenance to the mine and mining claims in question, and that, by a conveyance of the mine and mining claims, these things would have been included without specially mentioning them in the conveyance or by even referring to them by the usual terms of "hereditaments and appurtenances."

These parcels of ground and fixtures thereon were so clearly related to and connected with the principal thing, the mine and mining claims, that there is little, if any, room for doubt that both the parcels of land and fixtures were absolutely necessary in working the mine and in obtaining the usual benefits to be derived therefrom. The shaft, shafthouse, and hoisting works, together with the drifts leading from the shaft, and the other things, were as essential for ingress and egress to and from the underground workings of the mine as is an entrance to a hotel or other public or private structure. Had these things been constructed upon either one of the mining claims named, and which were worked together as a mine—and for the purposes of this decision we must assume that they were so worked—no one could doubt that all of them would have been an integral part of the mine itself. The only reason that made them, in one sense, an appurtenance, was that they were located upon ground to which the Comstock Company did not have the fee-simple title. The fact that the Comstock Company had a perpetual right to use the parcels of ground for the purposes stated in the complaint in no way made the right therein more than a mere easement. The right to use the ground was for a special purpose merely. No right in or to either the mineral or the soil was granted, nor does it appear that the California Company surrendered entire control or dominion over the parcels of ground. No doubt, in so far as having control of the fixtures and shaft was concerned, the Comstock Company had complete control and dominion; but its control and dominion were not the equivalent of a fee-simple title. The following authorities, we think, clearly demonstrate that the right of the Comstock Company in and to the two parcels of ground

constituted a mere easement, and that the improvements and fixtures placed thereon by said company, together with the ground, constituted an appurtenance to the mine and mining claims, and, under the law as generally applied, would have passed to the purchaser of the land without special reference thereto: Jones on Easements, secs. 1-5, 18-29; *Jackson v. Trullinger,* 9 Or. 393; *McShane v. Carter,* 80 Cal. 315, 22 Pac. 178; *Scott v. Moore,* 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749, and note, 764; *Scheel v. Alhambra Min. Co.* (C. C.), 79 Fed. 821; *Jarvis v. Seele Milling Co.,* 173 Ill. 192, 50 N. E. 1044, 64 Am. St. Rep. 107; *Steger v. Arctic Refrigerating Co.,* 89 Tenn. 453, 14 S. W. 1087, 11 L. R. A. 580; *Beatty v. Parker,* 141 Mass. 523, 6 N. E. 754; *Ford v. Springer Land Ass'n,* 8 N. M. 37, 41 Pac. 541, affirmed 168 U. S. 513, 18 Sup. Ct. 170, 42 L. Ed. 562.

The four cases last referred to involve mechanics' liens, and, so far as one can judge from the reasoning of the court, easements and appurtenances are governed by the same principles in mechanics' lien cases as in grants generally. Of course the statute under which the lien is claimed must always be kept in mind in determining the rights acquired by virtue of a mechanic's lien. All courts agree that these liens are the mere creatures of some statute, and that unless the provisions of the particular statute creating the lien are substantially complied with no lien is acquired. With respect to the character of construction that mechanic's lien laws ought to receive, the courts may be said to be in hopeless conflict. Much of this conflict, however, arises from the variant provisions contained in the statutes, and, at times, from the conflicting provisions of the same act. The more modern decisions, however, are to the effect that mechanic's lien statutes should receive a fair and reasonable, if not a liberal, construction, with a view to preserving their spirit and effectuating their purposes. (Bender-Moss, Mechanics' Liens, sec. 27; Phillips on Mechanics' Liens [3 Ed.], sec. 16; Boisot on Mechanics' Liens, sec. 37.) It may be further said that the more modern decisions        2

are practically harmonious in holding that where there has been a substantial compliance with the statute creating the lien, and the lien has in fact been established, the lien so established will not be defeated by mere technicalities nor by nice distinctions. (*Lumber Co. v. Martin,* 31 Utah 249, 87 Pac. 714; 20 Am. and Eng. Ency. Law [2 Ed.], 276.)

It would seem that this rule should prevail with full force in cases where liens have been established and foreclosed and rights have been acquired under the foreclosure sale by third parties. While, no doubt, the rights of subsequent creditors should not be defeated by a loose and unreasonable construction of the court's decree in ordering specific property to be sold as being included within the lien, yet such decrees should receive a fair and reasonable construction as against proceedings in their nature collateral. As we understand counsel for appellants, they do not, at least not seriously, combat the general principles we have invoked. They do, however, insist that under our mechanic's lien statutes mere appurtenances are not included unless the property on or against which the lien is claimed is specifically mentioned in the notice of intention to claim a lien, and, if not so mentioned, then such property, by force of the statute, is excluded. In other words, they contend that, while the lienor in the present instance might have acquired a lien by including the two parcels of ground with the improvements thereon in his notice, yet, by not mentioning them, they were, in point of both law and fact, excluded. This contention is based upon the general rule that, in acquiring a mechanic's lien, the property must be described, and that no lien is acquired on property unless it is described or referred to in the lien notice or claim. It is apparent therefore that whatever doubt or difficulty exists in this case arises out of the general rule just stated. This requires us to place a construction upon our own lien statutes which, in some respects, is in harmony with, while, in others, different from, the statutes of other states upon the subject.

Our mechanic's lien law, in substantially its present form, was adopted in 1894 (Laws 1894, p. 44, c. 41). The lien act consisted of sixteen sections, and contained the whole law upon the subject of mechanics' liens. In 1898, when the laws of the state were revised, and, to some extent, recast, this act was made chapter 1, title 39, of the Revised Statutes of 1898. The phraseology of the law was changed somewhat, and the different sections as originally numbered were, in many respects, changed, so that chapter 1 aforesaid is composed of 28, instead of 16 sections. Chapter 1 is composed of sections 1372 to 1399 inclusive in the Revised Statutes of 1898, and these sections retain the same numbering in the Compiled Laws of 1907. We refer to these matters, because, as will hereafter appear, the original act provided for liens for labor and material upon most every kind of improvement; but, in doing so, neither the matters for which liens were created nor the property upon which liens were given were mentioned in the same section. From the wording of the different sections it is, however, made apparent that sometimes some of the provisions of a particular section were intended to apply to the matters set forth in that section only, while it is equally apparent that other provisions in the same section were intended to apply to the act as a whole.

Section 1372, so far as material to the present inquiry, in substance, provides that:

"Mechanics, . . . and all persons of every class performing labor upon or furnishing material to be used in the construction, alteration, addition to, or repair, either in whole or in part, of any building, bridge, ditch, flume, acqueduct, tunnel, fence, railroad, wagon road, or other structure or improvement upon land, . . . shall have a lien upon the property upon which they have rendered service, or performed labor, or furnished materials."

Section 1379 reads:

"The liens granted by this chapter shall extend to and cover so much of the land whereon such building, structure, or improvement shall be made, as may be necessary for the convenient use and occupation of such building, structure, or improvement, and

the same shall be subject to such lien; and in case any such building shall occupy two or more lots or other subdivisions of land, such lots or other subdivisions shall be deemed one lot for the purposes of this chapter, and the same rule shall hold in cases of any other such improvement that shall be practically indivisible, and shall attach to all machinery and other fixtures used in connection with any such land, building, or structures."

Section 1381 reads as follows:

"The provisions of this chapter shall apply to all persons who shall do work or furnish materials for the working, preservation, or development of any mine, lode, mining claim, or deposit yielding metals or minerals of any kind, or for the working, preservation, or development of any such mine, lode, or deposit in search of such metals or minerals, and to all persons who shall do work or furnish materials upon any shaft, tunnel, incline, adit, drift, drain, or other excavation of any such mine, lode, or deposit; provided, that when two or more such lodes or deposits, owned or claimed by the same person or persons, or where the owners are different persons, and the same with the consent of all shall be worked through a common shaft, tunnel, incline, adit, drift, or other excavation, then all the mine, lode, or deposit so worked shall, for the purposes of this chapter, be deemed one mine."

Section 1386, in part, provides that any person claiming the benefit of this chapter must, within a time specified, "after furnishing the last material or performing the last labor for any building, improvement, or structure, . . . or performance of any labor in or furnishing any material for any mining claim, file for record . . . a claim in writing containing a notice of intention to hold and claim a lien . . . and also a description of the property to be charged with the lien sufficient for identification."

In section 1387 it is provided that "liens against two or more buildings, mining claims, or other improvements owned by the same person or persons may be included in one claim," but the claim must state the amount due on each building, mining claim, or other improvement.

There is only one other section to which we shall refer, namely, section 1397, which provides for liens for boiler makers and foundry men especially, but makes all of the provisions of chapter 1 applicable in securing such liens.

It may be observed therefore that there are three sections which provide for the creation of liens for certain things and against certain property. The other sections referred to provide how the liens may be secured and the scope or extent thereof. It is alleged that the lien in question was secured "for material and machinery furnished in and about the construction" of a certain mill on the four mining claims named in the complaint. All we have therefore is that the ground on which the mill was constructed was mining ground, or a part of a mine, and, inferentially, that the mine was operated and worked by the Comstock Company. Under these circumstances, counsel for appellants contend that the lien in this case did not come within section 1381, which specifically provides for liens on mines and mining claims, but that it comes within the provisions of sections 1372, 1379, and 1386. It is thus contended that, under section 1386, the property was required to be described so as to identify what was claimed, and that, under the provisions of section 1379, no more ground could be claimed than was "necessary for the convenient use and occupation of such building, structure, or improvement." It must, however, not be overlooked that this same section also provides that the lien may, under certain circumstances, attach to several lots or other subdivisions of land, and that for any "improvement that shall be practically indivisible (the lien) shall attach to all machinery and other fixtures used in connection with any such lands, buildings, or structures." We are not advised what the mill was constructed for, nor with what other fixtures or machinery it was connected, nor how the operation of the mill or its use was connected with or related to such other fixtures. Nor does it appear how the mill was situated with reference to the two parcels of land, nor how, if at all, the mill was related to them. If it be assumed that the lien in question fell within the provisions of section 1386, **3** whereby only so much ground could be taken as might be necessary for the convenient use of the mill, then

the question of how much was necessary had to be determined by the court in which the lien was foreclosed as a question of fact.

In 2 Jones on Liens, section 1368, the author, in referring to this subject, says:

"In general the lien attaches not only to the land which the building covers, but to the lot of land upon which it stands, and whatever belongs to the lot and is necessary to the enjoyment of the premises. This is a question of fact, not of law. The lien extends to appurtenances of the land or lot, if these are on the same lot; but it does not extend beyond the ground necessary for the proper enjoyment of the building, according to the intention and design of the owner."

The lienor may claim more land than is found to be necessary, and thus it may devolve upon the court, in view of all the circumstances, to determine the quantity of land to be sold. (*Willamette S. M. Co. v. Kremer,* 94 Cal. 205, 29 Pac. 633.) As against a collateral attack, it would seem that whatever land the court may order sold in a foreclosure suit must be deemed to have been necessary. (*Ward v. Crane,* 118 Cal. 679, 50 Pac. 839.) Nor will it ordinarily affect the lien or the lienor's rights in case he includes too much land in his lien claim. The court may limit the amount to what may be necessary in the decree and order of sale. (*Hardware Co. v. McCarty,* 10 Colo. App. 200, 50 Pac. 744.) Some courts have confined the lien strictly to the lot or land described, as appears from the following decision, where a lien was claimed against a building and on a lot upon which it stood, and the lot was described by number, it was held that the lien did not extend beyond the lot described, notwithstanding that the building upon which the work was done and for which the material was furnished extended beyond such lot. (*Western Cornice Mfg. Co. v. Leavenworth,* 52 Neb. 418, 72 N. W. 592.) This decision, however, is based upon the Nebraska statute. Under statutes similar to ours, in which the amount of land to which the lien may attach is left for determination, the courts have arrived at

a different conclusion. It has accordingly been held that, although a particular lot or parcel of land is specified in the lien notice, the lien will, nevertheless, extend beyond such lot if the building or improvement extends onto an adjoining lot. The latter ruling seems to be based upon the theory that the building or improvement is the principal thing, and the land upon which it is erected is an incident to the building for the purposes of the lien. If, in the notice of intention to claim a lien, the building or improvement is described, and a lien is claimed against it and the lot on which it stands, this, it has been held, is sufficient to impart notice to all that the lien will be coextensive with the building or improvement. (*Willamette S. M. Co. v. Kremer, supra; Warren v. Hopkins,* 110 Cal. 511, 42 Pac. 986; *Springer v. Kroeschell,* 161 Ill. 368, 369, 43 N. E. 1084.) Some courts have likewise extended the lien to appurtenances which extended outside of the boundaries of the lot or land upon which the building or improvement was erected. (*Beatty v. Parker,* 141 Mass. 523, 6 N. E. 754; *Steger v. Arctic Refrigerating Co.,* 89 Tenn. 453, 14 S. W. 1087, 11 L. R. A. 580; *Badger Lumber Co. v. Water Co.,* 48 Kan. 187, 30 Pac. 117, 30 Am. St. Rep. 306; *Carpenter v. Leonard,* 5 Minn. 155 [Gil. 119].)

It is true that, in Kansas and Minnesota at least, it appears from the opinions, the lien statute in terms extended the lien to appurtenances. It is also made to appear, from some of the cases at least, that the claim for a lien in terms included the things that were claimed as appurtenances, while in others it does not appear whether such appurtenances were specially referred to or not. Nor do the courts seemingly lay any stress upon this feature. Nor can we see wherein this is of compelling importance. If the thing is described in the notice of lien, the lien attaches, whether it be an appurtenance or not, if it is subject to a lien at all. We think by section 1379 it was intended to include necessary appurtenances without specially mentioning them by making the lien "attach to all machinery and other fixtures used in connection with any

such lands, buildings, or structures." While it may be said, and correctly so, that this language does not include a right or easement in real property as an appurtenance, yet we think that such an appurtenance is fairly included within the provisions of that section by which the land necessary to the use and enjoyment of the building is included within the lien claim. In case of an easement, consisting of a right of ingress and egress to and from a certain lot and building, and which was the only means of entrance to such lot and building, would it not be a very strict, if not a harsh, construction of section 1379, if it were construed to mean that nothing was included within the lien claim except the lot upon which the building stood and such other appurtenances, if any, as were located on the lot itself? And would it not be unreasonable to hold that while an easement or appurtenance would pass by a grant of the lot by deed without referring to the easement in terms or by designating it as an "appurtenance," yet it would not be included within a lien claim, nor pass upon a foreclosure sale of the lot and building as an appurtenance, unless it were specially described in the notice of intention to claim a lien? To require such a description is more than the statute requires. The statute requires only that a description sufficient to identify the property be given. If therefore the principal thing (the building and lot whereon it stands) is described, all that belongs to either as an appurtenance is, in contemplation of law, described and passes with the principal thing.

What we have said so far is based upon the theory advanced by counsel for appellants that the claim for the lien in question comes within section 1372, and hence must be entirely controlled by that and by section 1379. We are, however, dealing with a mechanic's lien on a mine and mining claim, and, in view of this fact, we think that the lien in question is controlled by section 1381, by which, in our judgment, a different rule is clearly contemplated. It is true that section 1381, down to the

36 Utah—11

word "provided," creates a lien for work and material applied to the preservation or development of any lode, mine, or mining claim; but what is termed a "proviso" in that section is not really such. This so-called "proviso" does not restrict nor modify only what is said in section 1381, but it is intended to apply to the whole chapter. Of this there can be no doubt, as it is, in terms, made to apply to the provisions concerning mines and mining claims referred to in the entire chapter. This is made clear by reference to the original act (Laws 1894, p. 44, c. 41), where, instead of the noun "chapter," the word "act" is used. In the Revised Statutes of 1898 the noun "chapter" was thus substituted for the noun "act." For the purpose of arriving at the true intention of the Legislature, we think this proviso should be considered as a separate section. The mere fact that it is called a "proviso" and is appended to a particular section is not controlling, when its real purpose and effect is to be ascertained. (*Marioneaux v. Cutler,* 32 Utah 480, 481, 91 Pac. 355, and cases there cited.)

We are of the opinion therefore that, for the purpose of acquiring mechanics' liens against mining claims when operated as a mine, the mining claims constituting the mine and all the property necessarily used and connected with the mine and mining claims, in view of the latter portion of section 1381, must be regarded as a unit, and that the lien attaches to the whole property necessarily used in connection with the mine and mining claims; and that, in such event, it is ordinarily sufficient to describe the mine as a whole or refer to the mining claims by name or number. When this is done, no one can ordinarily be misled, since, in a grant of the whole mine or mining claims by such a description, all which is an essential part thereof would pass either as an integral part of the mine or as a necessary appurtenant thereto. In this regard we can see no good reason for applying one rule to conveyances, and another to mechanics' liens; and it will be found that, unless the statutes make such a distinc-

tion, the courts generally make none. The authorities, for the purposes of mechanic's lien laws, consider the whole mine as a structure, and that the lien extends to the whole mine and all of its parts as though it were a single structure. That such must of necessity be the rule in order to preserve the rights and equities of all who may claim liens against the mine as well as of the owner thereof is clearly demonstrated by the Supreme Court of California in the following cases: *Williams v. Mountaineer, etc., Co.,* 102 Cal. 134, 34 Pac. 102, 36 'Pac. 388; *Berentz v. Belmont Oil Min. Co.,* 148 Cal. 577, 84 Pac. 47, 113 Am. St. Rep. 308; *Tredinnick v. Mining Co.,* 72 Cal. 78, 13 Pac. 152; *Silvester v. Coe Quartz Min. Co.,* 80 Cal. 510, 22 Pac. 217. See, also, 2 Jones on Liens, sec. 1368.

Taking the lien in question as an illustration, if any one had furnished material for the shafthouse and hoisting works and had filed a lien upon these structures alone, and this were permitted, the very entrance to the mine could be disconnected from the mine itself. The shafthouse and hoisting works would thus become useless without the mine, and it would be a useless thing without an entrance thereto. If a portion of the mine may thus be segregated, it may result in dismembering and in effect destroying almost the entire value of the mine as such. No one would contend that, if a mechanic had made repairs upon an expensive entrance to a hotel or other private structure such as the heating plant connected with such structure, he could claim a lien upon the entrance or heating plant alone, and in enforcing the lien could, by judicial process, sell the entrance or heating plant to one person while the main structure belonged to another, and in this way practically destroy the use of the entire structure until the owner, or some purchaser of the main structure, yielded to the terms of the purchaser of the entrance or heating plant. The doctrine which, for the purpose of mechanics' liens, treats mines and mining claims that are being actively operated and worked as a unit the same as other structures, is so manifestly just and equitable, and so well responds to the general utility involved,

that it seems like a work of supererogation to present any arguments or reasons why it should prevail. It has, however, been held that for improvements made on a mill site no lien can ordinarily be acquired against a mine or mining claim. (*Colorado Iron Works v. Taylor,* 12 Colo. App. 451, 55 Pac. 942.) This ruling is based upon the ground that neither the mill nor mill site is necessarily a part of the mine. While it is alleged in the complaint in the case at bar that the lien was obtained for the erection of a mill, yet nothing is made to appear what kind of a mill it was, except that it was erected on the mining claims. Under the authorities cited, *supra,* the mill thus became a part of the mining claims, and hence the rule announced in the Colorado case does not apply; but the validity of the lien as a whole is not questioned, and is therefore not involved. Nor do we wish to be understood as intimating that the lien as a whole was defective. Upon that question we express no opinion.

In view of the foregoing, we with some hesitation, have arrived at the conclusion that, under the allegations of the complaint, when considered together, the two parcels of ground, with appurtenances thereon, were essential to the working of the mine and mining claims described in the decree of foreclosure and order of sale; that all of them, taken together, constituted an appurtenance to the mining claims described in the decree, and passed to the purchaser at the foreclosure sale without specially describing or referring to either the parcels of ground or to the shafthouse, or hoisting works, or the other fixtures, and hence respondent H. A. McCornick, as the grantee of the purchaser at such sale, is the owner thereof. We desire to add that we have no inclination to either relax or depart from the wholesome rule that ordinarily nothing is covered by a mechanic's lien except the property which is therein specifically referred to in terms or described in the notice of intention to claim a lien, and that such a description includes only such things as are necessarily used and connected with the property so described or referred to. Further, that the court, in

the decree and order of sale, should, with some particularity, limit and define the property to which the lien is held to attach and which is ordered to be sold; that is, that the property should be described with such certainty as is ordinarily required in an execution or deed of conveyance.

We are of the opinion that, in view of the conceded facts, the lien in question fairly responded to the foregoing rule.

The court therefore did not err in sustaining the demurrer, and the judgment is, accordingly, affirmed.   Costs to respondents.

STRAUP, C. J., and McCARTY, J., concur.