## WOOD v. AKRIDGE.

No. 5282. Decided October 19, 1934. (36 U. [2d] 804.)

*L. R. Rogers, Willard Hanson,* and *J. F. Tobin,* all of Salt Lake City, and *Geo. T. Warren,* of Hollywood, Cal., for appellant.

*R. W. Irvine,* of Salt Lake City, for respondent.

FOLLAND, Justice.

This action was brought by plaintiff to recover on three causes of action. The first cause of action was for the sum of $3,750 alleged to have been loaned to the defendant April 15, 1927. The second and third causes of action were based on promissory notes. Defendant, by his answer, put in issue all the material allegations of the complaint. In addition thereto he set up a counterclaim of three causes of action against the plaintiff. In the first cause of action defendant asked for a rescission of an alleged contract made by him with plaintiff wherein the defendant agreed to and delivered 50,000 shares of the capital stock of the Premier Oil Company in consideration of the agreement of plaintiff at his own expense to drill an oil well on certain lands in Wyoming under lease to the Premier Oil Company and to employ defendant as manager and superintendent in charge of drilling operations. He alleged that plaintiff agreed to drill to a depth sufficient to test for oil or gas in commercial quantities in the Wall Creek sands in the Crooks Gap oil field. He alleged breach of the contract in plaintiff's failure to drill to such depth, and prayed for cancellation and termination of the contract and return to him of the shares of corporate stock delivered to plaintiff. In the second cause of action defendant alleged he had sold and delivered to plaintiff 17,000 shares of the corporate stock

of the Premier Oil Company at the agreed price of $2 per share, for which plaintiff promised and agreed to pay, and that demand had been made for payment, but such demands had been refused, and that there is now due and owing from plaintiff to the defendant the sum of $34,000. He prayed for judgment in this amount, with interest. By his third cause of action, defendant sued to recover the sum of $11,475 for services alleged to have been rendered by him as superintendent and manager in charge of drilling operations in the drilling of an oil well pursuant to the contract alleged in the first cause of action set out in the counterclaim.

The cause was tried to the court without a jury. After making findings of fact and conclusions of law, the court entered judgment for plaintiff for $3,750 on his first cause of action, and against the plaintiff on the second and third causes of action in the complaint, and also rendered judgment against the defendant on all causes of action in the counterclaim; a nonsuit having theretofore been entered as to the first and third causes of action. The appeal is taken by the defendant from the judgment against him on plaintiff's first cause of action and the judgment against him on the three causes of action in defendant's counterclaim. There is no appeal from the judgment in favor of the defendant and against the plaintiff on the second and third causes of action in the complaint. Defendant filed a motion for a new trial, which was denied, and such denial assigned as error.

Error is assigned to the court's finding that, "On or about the 28th day of December, 1928, plaintiff, at the instance and request of defendant, R. K. Akridge, loaned to defendant the sum of $3750.00 which defendant then and there promised and agreed to pay," on the ground that there is no evidence to support such finding, but on the contrary, plaintiff R. W. Wood admitted that the obligation on which the indebtedness arose was the indebtedness of plaintiff. The evidence discloses that

Akridge held a drilling contract on a government oil permit to certain lands in the Maricopa field in California, which permit had been canceled. J. Q. Critchlow was employed to go to Washington to attempt to secure a reinstatement of the permit by the Department of the Interior. Critchlow succeeded in his mission and procured a reinstatement of the permit. He thereafter brought suit in the courts of California against R. W. Wood (plaintiff here) and R. K. Akridge (defendant here) for the value of services rendered, and obtained a judgment against the defendants in that suit in the sum of $20,000. While that cause was pending on appeal, a settlement for $7,500 was agreed upon, and that amount paid by Wood in satisfaction of the judgment. Wood testified that the sum was paid to Critchlow on behalf of himself and Akridge after Akridge had promised and agreed that if Wood would pay the $7,500 in settlement of the judgment he would pay to Wood his proportion, which was one-half, or $3,750. Akridge now contends this promise, if made, was without consideration as Wood did only what he was obligated to do under the original agreement between Wood and Akridge touching the employment of Critchlow.

As indicated, Akridge was the owner of a drilling contract under the government permit which had been revoked. He agreed with Wood to give him one-half interest in the contract in consideration of Wood putting up certain money. There is conflict in the testimony as to what Wood promised to do for the assignment of the one-half interest in the contract. The transaction was closed in the office of a Mr. Jenson, an attorney at law in Los Angeles. At that time Wood gave his check for $500 to Mr. Jenson, who thereupon delivered it to Critchlow. Akridge at that time executed and delivered to Wood an assignment of a 50 per cent interest in the drilling contract. Akridge testified the employment of Critchlow was by Wood who advanced the $500 as expense money with the understanding he would pay any additional sum necessary to procure the

reinstatement, including payment to Critchlow for his services if successful. Wood testified the employment of Critchlow was by Akridge, and the $500 advanced by him was in full for all expenses and services incident to the reinstatement of the permit, that this was all he agreed to pay for the assignment of the 50 per cent interest in the contract, and that he made no statement or promise to pay anything additional for Critchlow's services. There was also a conflict in the testimony of the parties touching the settlement of the Critchlow judgment. Wood said the settlement was made with Akridge's concurrence and the money paid after Akridge's concurrence and the money paid after Akridge had agreed to pay his half. Akridge testified that he knew nothing of the settlement until 45 days after the judgment had been settled and satisfied, and that he did not agree to pay one-half of the amount paid by Wood.

It is true, as argued, that at one time in the course of his testimony, Wood answered yes to the following question:

"Q. And he (referring to Akridge) said to you, 'Mr. Wood, if you will bear the expense of this reinstatement I will give you a half interest in it.' Did he?"

But he also testified as follows:

"Q. And you agreed with Mr. Akridge in consideration of the half interest in that permit to pay the cost of its reinstatement? A. I did not. I agreed to pay $500.00 which I did put up. That is the check which I put up."

On further examination it became evident the purport of Wood's testimony was that he agreed to advance $500 only for the assignment of a one-half interest in the drilling contract.

On both issues of fact there was sufficient competent evidence to support the finding and judgment of the trial court. It is not for this court to weight the evidence or to determine which of the witnesses ought to have been believed. That was for the trial court.

The first cause of action in defendant's counterclaim is for the rescission of a contract alleged to have been made by defendant with plaintiff for the benefit of the Premier Oil Company, whereby plaintiff, in consideration of defendant delivering to him 50,000 shares of stock of the Premier Oil Company, agreed to drill or cause to be drilled a well to a depth sufficient to test for oil or gas in commercial quantities in what is known as the Crooks Gap oil field to the Wall Creek sands on the Richard E. Kirk and John T. Kirk leases in Wyoming. It is further alleged that a well was drilled by plaintiff to a depth of approximately 1,900 feet, and that plaintiff abandoned and renounced his contract and ceased and terminated the drilling of the well without any reason therefor, and refused and still refuses to proceed further; that by virtue of such breach of the contract by plaintiff, the defendant rescinds the contract and seeks to recover back the 50,000 shares of stock delivered by him to plaintiff. The trial court nonsuited defendant as to this cause of action on the ground that defendant's evidence in support of his counterclaim showed the contract was made for the benefit of the Premier Oil Company, and the cause of action, if any exists, was one existing in favor of the Premier Oil Company. The defendant disclaimed any purpose of suing on behalf of the corporation. The suit is not in form or substance a stockholders' suit, but is one wherein the defendant claims the beneficial interest in the contract for himself alone.

The evidence supports the view taken by the trial court. Akridge had drilling contracts on the Kirk leases in Wyoming. In May of 1929 he incorporated the Premier Oil Company for 100,000 shares and had 94,700 shares issued to himself, 5,000 shares issued to his attorney, and 100 shares each to three other persons who qualified as directors of the corporation. There was no stock left in the treasury of the corporation. The stock thus issued was fully paid by the transfer to the corporation of the drilling contracts referred to and other oil and gas leases on adjacent lands

held by Akridge. The contract made with Wood was verbal. Akridge's version was that he agreed to and actually delivered to Wood 50,000 shares of stock of the corporation in consideration of his promise to drill a well to the Wall Creek sands. Wood's version was that Akridge agreed to deliver to him 62,000 shares of stock in the corporation in consideration that he finance the company by advancing to it a sum of money not to exceed $15,000 for the purpose of drilling a well to test the Kirk land, and that a well was subsequently drilled by the Premier Oil Company with money furnished by him. Wood received 62,000 shares of stock, and later demanded and received an additional 5,000 shares. He furnished to the corporation funds to the extent of approximately $35,000. While some minor amounts were paid by Wood's personal check, most of the money went into the corporation and was paid out on check of the corporation treasurer countersigned by a certified public accountaint employed by the company to keep the books of account. The contracts and leases to the lands to be developed were all assigned to and held by the Premier Oil Company. In his counterclaim, defendant alleged that the drilling contract made by the defendant with the plaintiff "was made for the benefit of the Premier Oil Company." While a court of equity having Wood before it in the cause might order him to return the stock to Akridge, there was no possibility of the court being able to place the parties in status quo, for the reason that the corporation which received and expended the money furnished by Wood is not a party to the suit. The $35,000 of Wood's money furnished to the corporation had all been expended, and there is no evidence from which it could be inferred that any of it could now be returned. The inference is irresistible from the method of incorporation and the issuance of practically all the stock to Akridge that it was the original intention he should furnish stock to provide the money with which to develop the property, or, if this were not done, that the money might be procured on some royalty basis or by a conveyance of

part of the lands held by the corporation. From the testimony of Akridge, it is clear that Wood had no intention of personally drilling the well, but that it was his intention to furnish the money to the corporation and that the corporation should drill the well. Akridge testified that Wood said he "wanted his interest through the Premier Oil Company as it took him away from the personal liability; that he was too wealthy a man to operate in his own name."

Appellant contends the corporation was "the alter ego of the copartnership of Wood and Akridge," and cites cases in support of the proposition that where the owner of all the corporate capital stock uses the corporation merely as an instrument through which he transacts his business, separate entities will be disregarded when necessary to prevent fraud and protect the rights of third parties. *Zenos* v. *Britten-Cook Land & Livestock Co.*, 75 Cal. App. 299, 242 P. 914. The same principle applies where two own the stock and act in conjunction in the name of the corporation. *McCormick Saeltzer Co.* v. *Grizzly Creek Lumber Co.*, 74 Cal. App. 278, 240 P. 32. In each of these cases third parties were seeking to hold the corporation for obligations created in the name of the corporation by its officers who were owners of all the capital stock. The question was one of authority of such officers to bind the corporation. The rules of law therein stated are undoubtedly correct as applied to the facts in such cases, but we are unable to see wherein they are controlling or even applicable in any degree to the facts before us. There is here no evidence of a copartnership between Wood and Akridge. There is no question of authority of an officer to bind the corporation in dealings with third parties. At the time Akridge made the contract with Wood he was the owner of practically all of the capital stock. The contract was made, according to the allegation in his counterclaim, "for the benefit of the Premier Oil Company." The money furnished by Wood was for the purpose of developing the property of the corporation. At the time of the trial, Wood had purchased some stock from one

of the stockholders other than Akridge, and had sold some of his stock to other persons. The real issue is one of fact and is twofold; whether by the contract Wood was to furnish money to the corporation with which to drill the well, or whether he obligated himself to drill the well personally, and whether the contract was made for the benefit of the corporation or for the benefit of Akridge personally. The evidence, we think, clearly shows that Wood had no intention of personally drilling the well, but that he intended to and did furnish the funds with which the well was drilled by the corporation. The only written contract connected with the transaction was a contract between the Premier Oil Company as first party and the Sullivan Machinery Company as second party, wherein the second party undertook "to furnish one diamond core drill outfit * * * to be used * * * by the first party to drill or test such locations as may be designated by the first party," etc., and "as agent and on behalf of the first party to secure a crew to operate the outfit," such crew to consist of one foreman, two drill runners, and such other helpers as might be necessary to do the work.

There is no need to recite the evidence in greater detail, since it is quite voluminous. We have carefully read the entire transcript and reached the same conclusion as that arrived at by the trial court. If there is any breach of contract by Wood, the cause of action would enure to the Premier Oil Company and not in favor of Akridge personally.

The second cause of action in the counterclaim is for the recovery of $34,000 for 17,000 shares of stock of the Premier Oil Company alleged to have been sold by Akridge to Wood for the agreed price of $2 per share. This number of shares was actually delivered to Wood by Akridge. The only question is whether there was a sale of the stock or whether the stock was delivered as part of the consideration for the $35,000 furnished to the corporation by Wood. The evidence on this issue is in conflict. As indicated by our quotations from the evidence above, there is

sufficient competent evidence to support the finding made by the trial court on this issue, and we cannot disturb such finding on this appeal.

It is argued, however, that in any event no consideration passed from Wood to Akridge for the last block of 5,000 shares delivered, since under his contract Wood was obligated to put up enough money to drill the well. The evidence on behalf of Wood indicates that this additional block of 5,000 shares was delivered to him on demand and claim that he had been and would be further required to put up more money than had been represented to him by Akridge as the cost of the well. He said his original agreement was to furnish $15,000. At the time this demand was made he had furnished already more than $20,000, and it was apparent that much more would be needed. The complete answer to appellant's argument is that the transaction was completed at the time of the delivery of the 5,000 shares of stock by Akridge to Wood. Wood is not now seeking to have the stock delivered pursuant to the promise. The stock was actually delivered and the transaction completed. The only question before the court was whether Wood had promised to pay $2 per share for the stock, and on that issue of fact the court found against the defendant. The finding, being supported by evidence, will not be disturbed.

The third cause of action in defendant's counterclaim is that plaintiff is indebted to the defendant for serices as manager and superintendent of drilling operations. The evidence to support defendant's claim is found in that referred to under his first cause of action. The evidence was in conflict. As already indicated in our discussion of the first cause of action, there is sufficent evidence to support the court's finding that Wood is not personally indebted to Akridge for services rendered in connection with the drilling of the well. The finding must be sustained.

Error is assigned to the admission in evidence of certain

of the minutes of meetings of the board of directors of the Premier Oil Company. The minutes of the meeting of July 9, 1929, a meeting at which Akridge was shown to be present, recited:

"Mr. Akridge advised the board that he had agreed to give to Mr. Wood a total of 62,000 shares for Mr. Wood's cooperation financially."

While counsel for appellant now argues that these minutes were improperly admitted, a reading of the transcript discloses that the minutes of the meeting of July 9, 1929, were admitted without objection or exception. It is too late now to complain. The minutes of the meeting of October 8, 1929, at which Akridge was not present, show that Wood stated that he would insist that Akridge deliver to him 10,000 shares additional on account of the well costing more than had been represented to him. This entry in the minutes was stricken by the court. The evidence, however, shows that the information contained in the minute entry was communicated to Akridge by telephone, he being then in Los Angeles, and that he immediately came to Salt Lake City and as a result of his conference with Wood he delivered to him 5,000 shares of the corporation stock of the Premier Oil Company in settlement of the demand for 10,000 shares made by Wood. There was no error with respect to the admission of the minutes.

On cross-examination, Akridge was asked respecting certain testimony claimed to have been given by him in the case wherein Critchlow was plaintiff and Wood and Akridge were defendants. Questions and answers were read to him from a transcript claimed to be a transcript of the proceedings in that case. The appellant objected that the transcript was not properly authenticated. The court overruled the objection. Thereupon counsel asked Akridge if he had testified at that trial as indicated by the questions and answers which were read to him. He testifed that he did so answer. If the witness had answered that

he had not so testified, then it would have been necessary, if counsel had sought to introduce the transcript in impeachment of the witness, to prove that it was a true and correct transcript of the evidence given. Since Mr. Akridge testified he had answered as shown by the transcript, it was not offered in evidence, and its lack of authentication was immaterial. There was no error by the court in permitting counsel to cross-examine the witness as indicated.

A motion for a new trial was made by defendant based on affidavits indicating newly discovered evidence. Counter affidavits were filed on behalf of plaintff wherein some of of the allegations in appellant's affidavits were admitted, some were denied, and others explained. Had all this testimony been before the court at the trial, the decision of the court would have been the same. There was no error in denying a new trial.

The judgment is affirmed, with costs on appeal to respondent.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.