**CINCINNATI FINANCE COMPANY v FIRST DISCOUNT CORPORATION et**

Ohio Appeals, 1st Dist, Hamilton Co

Decided Apr 11, 1938.

A. O. Haefner, Cincinnati, and Wm. E. McKinley, Columbus, for Cincinnati Finance Company.

Donald E. Calhoun, Cincinnati, for First Discount Corporation.

## OPINION

By MATTHEWS, J.

These appeals on questions of law bring under review judgments rendered by the Common Pleas Court of Hamilton county in actions in replevin instituted by one mortgagee of automobiles against a subsequent mortgagee.

The trial court rendered judgments in favor of the subsequent mortgagee.

The chattel mortgages were filed with the county recorder, with what appears to be affidavits in due form of the amounts due, that the claims were just and unpaid, and that the mortgages were given in good faith to secure the amounts due.

The first objection to the validity of these mortgages is that those statements were not sworn to. The notary testified that the mortgages were presented to her by F. C. Rankin, an agent of the mortgagee, and that said agent signed them in her presence, and that she—the notary—signed the notarial jurat in the presence of the agent, but that the agent was not required to raise her hand, no oral oath was administered, and, of course, no response thereto given. In other words, no word or act passed between them at the time other than the signing of their names in the appropriate places.

Is that a sufficient compliance with the law?

In deciding this question, the language of the statement signed by the parties seems to us to be controlling. This statement begins "affiant being first duly sworn says," and following the signature of the agent of the mortgagee is the jurat in the usual form—"Subscribed and sworn to before me," etc.

We hold that where a person, for the purpose of taking an oath in compliance with law, knowingly signs a written statement of an oath before an officer authorized to administer an oath, the law is complied with as effectively as when he responds to an oral oath. 30 O Jur. 448, 20 R. C. L. 507, Atwood v State of Mississippi, 51 A. L. R. 836, and annotation.

We, therefore, hold that the mortgages were duly filed with the recorder, and constituted constructive notice of the plaintiff's liens.

The plaintiff allowed these automobiles to remain in the possession of the mortgagor, who was a dealer, and permitted him to place them in his display room for the ultimate purpose of sale. The arrangement or agreement between the mortgagee and the mortgagor, as shown by the evidence, is epitomized in the testimony of the mortgagee's agent as follows:

"Q. What I want you to do is tell the court the understanding that you had with the Oakley Auto Sales regarding their floor plan mortgages; how they were to be paid off; how they were to be sold; how the whole transaction could be handled without embarrassing you; explain the transaction.

A. The understanding or the method of operation was that when a car was sold the purchaser was either brought to the office; a retail transaction made out; the floor-plan mortgage paid off; or, in case of a cash deal, we were immediately notified of the sale and the check sent or mailed into us immediately.

"Q. Mr. Farrell, did you or did you not give your consent to any sale before the mortgage would be paid?

A. No, sir.

"Q. Will you tell the court what percentage of transactions would be a retail deal; that is, whether they would come into your office and complete the transaction there?

"Mr. Calhoun: I object.

"The Court: I am going to overrule the objection because the matter has been opened up. We will discuss the legal aspects later.

"Mr. Calhoun: Note my exception.

(The last question was read.)

A. It is very difficult to answer.

"Q. We are talking about the Oakley Auto Sales. How much would they bring up, a large or small percentage?

A. I would say off-hand a small percentage into the office.

"Q. How was the transaction handled then? Would they notify you they had a prospect?

A. Call it in to us.

"Q. When they would call into your office instead of coming in that a purchaser wanted to buy this car on which you had a mortgage, then you would determine whether or not it would be all right to have this car sold?

A. Right.

"Q. Tell the court when you would release the mortgage on the car—the floorplan mortgage you have on the car?

A. Well * * *

"Q. Would you release it before or after?

A. After. ,

"Q. Did you ever release a floor-plan mortgage until after you were paid?

A. No, of course not."

Our interpretation of this evidence is that the mortgagee authorized the dealer to negotiate for a sale of the ██ automobiles, but did not authorize a completed sale, and that, as between the mortgagee and mortgagor there was no authority under any circumstances to sell free of the mortgage. They contemplated a satisfaction of the mortgage either by payment in cash or the substitution of a mortgage executed by the purchaser before the automobile would be relieved of the prior lien.

The dealer, therefore, not having actual authority to sell free of the lien, the lien continued unless the arrangement created

ar apparent authority more extensive than the actual authority.

The mortgagor sold these automobiles to salesmen in his employ, who knew of the existence of the mortgage and the plan of operation. They executed mortgages to the dealer for the unpaid purchase price, and the dealer assigned these mortgages for value to the defendant.The plaintiff knew that one of the salesmen—Mace --contemplated buying the automobile, but knew nothing of the other transaction until after it had been consummated.

The evidence is conflicting as to whether the defendant had actual knowledge of the existence of the plaintiff's mortgage, It is clear, however, that Mace knew of the · plaintiff's mortgage and the full details of the method of operating thereunder. The ·record is silent as to the extent of the knowledge of the other purchaser, but it does appear that he was employed by the dealer as a salesman, and, of course, in consummating sales would come to know, as Mace did, of the way sales were consummated by his employer.

The defendant contends that the plaintiff is estopped to assert its mortgages against it.

As we view the situation, the defendant, as assignee of the mortgages executed by the salesmen has as good but no better title than the salesmen. The salesmen knew of the plaintiff's mortgages and the defendant's rights must be determined as though it had knowledge. If the salesmen acquired a title, subject to these mortgages, they could not convey a title superior to them. Now, as the salesmen knew of the limitations upon the dealer's authority to sell, they were in no position to claim that they had been misled to their damage by any conduct on the part of the plaintiff. They knew that its mortgage would not be cancelled upon a sale of the automobile by the dealer unless and until the dealer paid or made some arrangement for its cancellation. They knew that this arrangement with the plaintiff for the cancellation of the mortgage should be made before or at the time the dealer sold the automobile, and, having such knowledge, they should have insisted that the dealer secure a cancellation before finally consummating the purchase. We do not find the elements of estoppel.

There are two classes of cases of sales by mortgagors of mortgaged property that are closely related in both of which the mortgagee loses his lien. One class in-

cludes all those where the evidence shows that the mortgagor had actual authority to sell free of the lien. In this class the bona fide purchaser from the mortgagor takes free of the mortgage, notwithstanding he had actual knowledge of the mortgage. The cases belonging to this class are assembled in the annotation to the case of Arnold v First Nat'l Bank, 97 A. L. R. 643. See also 10 Am. Jur. 843.

The other class includes all those cases in which it appears that the mortgagor did not have actual authority to sell, but the conduct of the mortgagee had clothed him with an apparent authority. The liability in this latter class is based on estoppel, and, of course, for estoppel to arise the purchaser must have acted upon the appearance of authority. In such cases, knowledge of the existence of the mortgage will defeat the purchaser's claim, because he was not misled by the appearance of authority. Cases of this class are collected by the authors of textbooks and digests under the head of estoppel, and illustrate the principle referred to in National Guarantee & Finance Co. v Pfaff Motor Car Co. 124 Oh St., 34.

We are of the opinion that the facts in this case place it in either category. It is not in the first, because the dealer had no actual authority to sell free of the mortgage. It fails to meet the requirements of the second, because the buyer knew that whatever the appearance, the dealer had no actual authority.

We are of opinion that the Factor's Act (§8360, GC) does not apply for the reason that the dealer was not "intrusted" with the possession of these automobiles "for the purpose of sale." The dealer had title, subject to the mortgages, and it was by virtue of that title that he was in possession, and it was his title that he was seeking to sell—not that of the mortgagee.

Other reasons are urged against the validity of the plaintiff's mortgage, but we oo not find them substantial.

For these reasons, the judgment is reversed, and, as it appears affirmatively on the record that the plaintiff is entitled to judgment, final judgment in its favor may be entered in each case.

ROSS, PJ, and HAMILTON, J. concur.