## SPANGLER v. DISTRICT COURT OF SALT LAKE COUNTY et al.

No. 6514.  Decided August 17, 1943.  (140 P. 2d 755.)

See 22 C. J. S., Criminal Law, sec. 374; Formalities of administering or making oath, note, 51 A. L. R. 840. See also 39 Am. Jur. 498.

*E. A. Rogers* and *Harry Metos,* both of Salt Lake City, for plaintiff.

*H. D. Lowry,* of Salt Lake City, for defendants.

LARSON, Justice.

A proceeding in certiorari to the District Court of Salt Lake County to set aside a judgment of conviction made and entered in that court, and dismiss the complaint. Hereafter plaintiff herein will be referred to as defendant.

On the 2nd day of March, 1938, one E. B. Harrison, a law enforcement officer of the Department of Registration, appeared at the defendant's office in the Felt Building in Salt Lake City, Utah, and advised him that a complaint had been issued against him for violating the law and requested that he go with him to Sandy, Utah, before R. White, a Justice of the Peace. The defendant accompanied him to Sandy and to the place of business conducted by the said Justice, and thereupon the said Harrison signed a complaint which he had procured from the County Attorney's Office, but did not swear to it or take any oath in regard to said complaint. The warrant of arrest was also produced by said Harrison and signed by said Justice.

The defendant was not represented by counsel, nor was he advised that he was entitled to counsel, nor did he in any manner waive the right to counsel. The Justice read the complaint to the defendant and asked him if he wanted to enter a plea. The defendant said something about writing out the prescription, and the justice said to him, "Well are you guilty of this?" The defendant said, "Yes." Then the justice asked him if he were ready for sentence and defendant said that he might as well get it over with and the justice thereupon sentenced him to pay a fine of $299 and serve six months in the county jail, that the jail sentence would be suspended upon payment of the fine.

It has been stipulated in this case that no entry of said oral judgment was made in the justice's docket until November 28, 1938. Within the time allowed by law the defendant appealed to the District Court of Salt Lake County from the judgment and sentence in the said case, and on November 27, 1939, defendant moved the court to dismiss said cause upon the grounds alleged in said motion, which motion was denied. On June 5, 1942, the case was brought on for trial in the District Court, and over the objection of the defendant, the state was permitted to amend the original complaint for the reason that the same did not state a cause of action. The defendant was tried before a jury

and convicted, and sentenced to serve 90 days in the county jail. Defendant brings certiorari charging the District Court was without jurisdiction to hear or determine the matter on the grounds:

First: That the complaint before the justice was not sworn to as prescribed by law.

Second: That the justice's court did not have jurisdiction because the defendant was not represented by counsel, did not waive counsel, and the justice did not advise him that he was entitled to counsel.

Third: That the justice's court lost jurisdiction of the cause and of the defendant by not rendering judgment within two days after verdict on March 2, 1938; and that the purported judgment entered by the justice November 28, 1938, was null and void.

Fourth: That since there was no valid complaint before the justice, and that court had no jurisdiction to enter its judgment, the District Court, whose jurisdiction in the cause would be derivative, could have no jurisdiction.

Fifth: That since the original complaint did not state a public offense, it could not be amended in the District Court in a matter of substance, since the statute of limitations had then run against the prosecution.

Let us examine the first point made by defendant.

105-57-2, U. C. A. 1943, provides:

"Proceedings and actions before a justices' court for a public offense must be commenced by complaint under oath   *   *   *."

And this court has said that the complaint must be sworn to before a valid conviction may be had. *State* v. *Zolantakis*, 72 Utah 251, 269 P. 1006. The record clearly shows, and there is no dispute about it, that Harrison, the complaining witness, did not take an oath, but merely signed the complaint in the presence of the justice of the peace, and under some printing, which reads in part "on being duly sworn by me, on his oath did say. * * *" There is a

division of authority whether such an act as this will constitute the taking of an oath, and the courts have gone into many technicalities in discussing this mater. In *O'Reilly* v. *People*, 86 N. Y. 154, 40 Am. Rep. 525, where affiant took an affidavit already signed, to a notary, who certified it without any questions being asked, the court held that this was not sufficient to constitute an oath. It was pointed out that as the affidavit read "being duly sworn," as the complaint herein reads, rather than "I do hereby swear" there was no intent shown to undertake a present obligation under oath. The court goes on:

"To make a valid oath, for the falsity of which perjury will lie, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act, by which the affiant consciously takes upon himself the obligation of an oath. The delivery in this case of the signed affidavit to the officer was not such an act, and was not made so by the intention of the one party or the supposition of the other."

However, in the instant case, the complaint was signed in the presence of the justice, though there were no formalities of giving an oath.

An oath has been variously defined as

"an affirmation of truth of a statement, which renders one willfully asserting untrue statements punishable for perjury," *United States* v. *Klink*, D. C. Wyo., 3 F. Supp. 208; "an outward pledge given by the person taking it that his attestation is made under an impending sense of his responsibility to God," *Atwood* v. *State*, 146 Miss. 662, 111 So. 865, 866, 51 A. L. R. 836; "a solemn appeal to the Supreme Being in attestation of the truth of some statement, and an outward pledge that one's testimony is given under an immediate sense of responsibility to God," *State* v. *Jones*, 28 Idaho 428, 154 P. 378, 381;

any form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully, *State ex rel. Braley* v. *Gay*, 59 Minn. 6, 60 N. W. 676, 50 Am. St. Rep. 389. It has also been said that while no set formula is required to constitute an oath in verifying a complaint, there must be an unequivocal act whereby

affiant consciously takes upon himself the obligation of an oath, *State* v. *Tull*, 333 Mo. 152, 62 S. W. 2d 389, a form of oath which is of binding force and effect on the conscience of the person to whom it is administered is sufficient. *State* v. *Gay*, supra.

Under our statute, 103-43-1.10 U. C. A. 1943 (originally Laws 1937, p. 248), a person willfully swearing to a false complaint would be guilty of perjury, and 103-43-4 provides

"it is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner."

The California Supreme Court in *People* v. *Simpton*, 133 Cal. 367, 65 P. 834, 835, was considering an indictment for perjury. In the course of the opinion it was said:

"In an indictment for perjury it must be directly stated in some form of apt words that the defendant was sworn. It is not sufficient that it appears by inference or argument. * * * One may swear who is not duly sworn. In one case the oath, so to speak, is self-imposed, and the swearer incurs no legal liability thereby, while in the other the oath is administered by a person having authority so to do, and the affiant takes it subject to the pains and penalties for perjury. *United States* v. *McConaughy*, D. C., 33 F. 168."

In *People* v. *Cohen*, 118 Cal. 74, 50 P. 20, 22, the court was discussing the application and effect of the statutory provision, identical to ours set out above, that irregularities of administration of the oath are no defense in a perjury prosecution, and they say:

"Whatever the character of the 'irregularity' or informality which would be obviated by this section, it was manifestly *not intended to excuse the necessity of a valid oath*." (Italics added.)

The court then goes on to conclude that an oath administered by the clerk of the court, who was not qualified under the statutes to give oaths is not valid, and will not support a charge of perjury.

Supposing that the information contained in the complaint had been false could the oath taken be the basis for

a perjury charge? We think not. The most that the information could allege would be that the prosecuting witness appeared before the justice of the peace, and in his presence signed the complaint containing the words "who on being duly sworn by me, on his oath did say * * *," and without any oral oath having been administered. There could be no allegation which directly states that the defendant was sworn, but it would be in the nature of an "oath self imposed."

We are aware that there is a line of cases, mostly recent decisions, which have relaxed to a great degree the requirements for the taking of a valid oath. As in *Cincinnati Finance Co.* v. *First Discount Corp.*, 59 Ohio App. 131, 17 N. E. 2d 383, 384, where the court, in considering a case where an agent of the mortgagee appeared before a notary, signed certain affidavits and the notary then signed the jurat, made the following statement:

"In deciding this question, the language of the statement signed by the parties seems to us to be controlling. This statement begins 'affiant being first duly sworn says,' and following the signature of the agent of the mortgagee is the jurat in the usual form—'Subscribed and sworn to before me,' etc.

"We hold that where a person, for the purpose of taking an oath in compliance with law, knowingly signs a written statement of an oath before an officer authorized to administer an oath, the law is complied with as effectively as when he responds to an oral oath." Citing cases.

In contrast is the holding of, and cases cited in *Milmoe* v. *Meyer*, Co. Ct., 15 N. Y. S. 2d 899, 901, where the justice of the peace merely asked a witness 'Do you swear that the sum due from the defendant * * *," etc., and the witness replied "I do." The court there said:

"While a wide scope is given as to the form of an oath, some form remains essential, and something must be present to distinguish between the oath and the bare assertion. Some act must be done to characterize it as an oath and to show that the affiant conscientiously takes upon himself the obligation of an oath. * * * In *Parish* v.

*Golden,* 35 N. Y. 462, it was held that if an oath contained substantially the matter required by statute the defect may be disregarded.

"Did the alleged oath administered to witness Milmoe as shown by the Return, substantially comply with the statute? He neither swore nor affirmed that his evidence should be the truth. Can it be said that it substantially conformed with Section 245 in that he solemnly, sincerely and truly declared and affirmed?

"In *Bookman* v. *City of New York,* 200 N. Y. 53, 54, 93 N. E. 190, 191, where the affiants merely signed their names and the Commissioner of Deeds asked them 'Is that true,' it was held to be insufficient."

We believe the correct interpretation of the law to be that there must be some outward formality, some manifestation of the intention to place the affiant under the penalty and obligation of an oath. There must be definite evidence that affiant was conscious that he was taking an oath; that is there must be not only the consciousness of affiant that he was taking an oath, but there must be some outward act from which that consciousness can be definitely inferred. That cannot be done from the mere signature to a printed form of oath. This does not mean that in every case, extrinsic evidence must be produced to show an oath was in fact administered. What we do hold is that where it is admitted, or established by proper proof, that nothing was done except to hand a written, typed or printed paper to the complaining party, who without more merely subscribed his name thereto, such does not constitute a complaint under oath as required by our statute. We do not hold that one who has himself signed the oath, may not in a proper case be estopped from asserting that he was not sworn, or did not intend to, or did not know that he was in effect taking an oath. But where an interested party other than the signer raises the question, the fact that the words above the signature are in form an oath, is not conclusive, although unless the question is properly raised and evidence to the contrary furnished, the fact of the signature under the oath justifies the inference that the oath was properly taken. Particularly should this be the rule where a criminal complaint issues, and the life

and liberty of a citizen is at stake. Our statute, 105-57-2, U. C. A. 1943, provides that complaints in criminal actions brought before the justice's court must be a "complaint under oath."

We therefore hold that the mere appearing before the justice and signing a criminal complaint does not constitute swearing to it, and therefore the complaint under the foregoing statute was not a valid one, and did not give jurisdiction to the justice of the peace. *State* v. *Zolintakis,* 72 Utah 251, 269 P. 1006; *Beatie* v. *Baker,* 97 Utah 145, 91 P. 2d 441. We believe that this disposes of the entire case, since in *Hardy* v. *Meadows,* 71 Utah 255, 264 P. 968, 974, this court said:

"The effect of the holdings in all these cases is that the jurisdiction of the district court of a cause on appeal from a justice's court or other inferior court is derivative and as is held in many other jurisdictions; that if the inferior court had not jurisdiction of the cause and of the subject-matter therein presented, the district acquired no jurisdiction thereof by appeal."

This case is cited with approval in *Wood* v. *Akridge,* 84 Utah 468, 36 P. 2d 804. Therefore, since the justice's court had no jurisdiction because there was no complaint—one that was not sworn to—the district court could not acquire jurisdiction by the appeal. It thus becomes unnecessary to consider the other points raised.

The case is therefore remanded to the district court with directions to vacate its judgment and dismiss the cause.

WOLFE, C. J., and McDONOUGH, MOFFAT, and WADE, JJ., concur.