**William J. COLMAN, Plaintiff and Appellant,**

v.

**Fred C. SCHWENDIMAN, Chief, Driver License Services, Department of Public Safety for the State of Utah, Defendant and Respondent.**

**No. 18652.**

Supreme Court of Utah.

Feb. 29, 1984.

Sumner J. Hatch, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Bruce M. Hale, Mark K. Buchi, Asst. Attys. Gen., Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

The Utah Department of Public Safety revoked plaintiff William Colman's driver's license because of his failure to submit to a breathalyzer test pursuant to Utah's implied consent statute, U.C.A., 1953, § 41-6-44.10. The district court upheld that decision; plaintiff appeals. We reverse.

Near midnight on May 29, 1981, plaintiff was stopped by the Highway Patrol because of his erratic driving behavior, including allowing his vehicle to drift over the center line several times. When plaintiff rolled down his window to speak to the officer, the officer detected an odor of alcohol and asked plaintiff to exit his vehicle. Plaintiff did so, stumbling after exiting and

leaning against the car to talk to the officer. The patrolman then asked plaintiff to submit to a field sobriety test; plaintiff refused. Based on plaintiff's driving, subsequent behavior and the odor of alcohol, the patrolman concluded that the plaintiff was under the influence of alcohol and arrested him. The patrolman then requested plaintiff to submit to a breathalyzer test, warning him of the consequences imposed by the implied consent statute if he failed to do so. Plaintiff refused to take the test.

At the jail, the patrolman filled out a form affidavit provided by the Highway Patrol which states that the plaintiff refused to submit to a chemical test after having been arrested for driving under the influence and after having been informed of the consequences of refusal.

Below the signature of the arresting officer, the affidavit recites that it was "Subscribed and sworn to before me this ... day." Space for the signature and seal of a notary public then follows.

The patrolman did not sign the affidavit form at that time. Approximately three months later, on August 19, 1981, the patrolman took the affidavit to the Wasatch County Treasurer, a notary, and signed in his presence. There was no conversation between the patrolman and the notary with one exception: the notary requested the patrolman's driver's license for identification. There was no affirmative act of swearing by the officer.

On January 29, 1982, a hearing was held before the Department of Public Safety and plaintiff's driver's license was suspended. The plaintiff appealed to the district court de novo. The court found that the plaintiff had refused to submit to a chemical test (breath) and ordered revocation of his license for one year. Plaintiff appeals from that decision, claiming that the revocation proceeding was invalid because the arresting officer failed to submit a "sworn

report" as required by § 41–6–44.10(b) and because the officer was guilty of laches in failing to submit the report until three months after the incident.

Section 41–6–44.10(b) in pertinent part reads:

> If [a person who a peace officer has reasonable grounds to suspect has been driving a motor vehicle while under the influence of alcohol or drugs] has been placed under arrest and has thereafter been requested by a peace officer to submit to any one or more of the chemical tests provided for in subsection (a) of this section and refuses to submit to such chemical test or tests, such person shall be warned by a peace officer requesting the test or tests that a refusal to submit to the test or tests can result in revocation of his license to operate a motor vehicle. Following this warning, unless such person immediately requests the chemical test or tests as offered by a peace officer be administered, no test shall be given and a peace officer shall submit a *sworn report* that he had grounds to believe the arrested person had been *driving* or was in actual physical control of a motor vehicle while under the influence of alcohol or any drug or combination of alcohol and any drug and that the person had refused to submit to a chemical test or tests as set forth in subsection (a) of this section. Within 20 days after receiving a *sworn report* from a peace officer to the effect that such person has refused a chemical test or tests the department shall notify such person of a hearing before the department.

(Emphasis added.)

This Court in *Helsten v. Schwendiman* [1] held that the sworn report required by the statute is essential to the validity of the revocation proceedings and that "where the report is not in fact sworn to, the subsequent proceedings are void." [2] In *Helsten,*

---

**1.** Utah, 668 P.2d 509 (1983), a case consolidated with *Stevens v. Schwendiman.* Notwithstanding my dissent in those cases, I recognize that the decision reached by the Court now constitutes the law in this jurisdiction.

**2.** *Id.* at 512.

the reports were not signed in the presence of a notary. The Court held that they were thus not validly sworn to and the license revocations were a legal nullity.

In this case, the officer did sign the affidavit in the presence of a notary. He did not, however, affirmatively swear to that report.

Some courts have held that signing an affidavit in the presence of a notary is sufficient to constitute the taking of an oath.[3] However, this Court has not followed that view. In *Spangler v. District Court of Salt Lake County*,[4] we said that to constitute the taking of an oath:

> There must be definite evidence that affiant was conscious that he was taking an oath; that is, there must be not only the consciousness of affiant that he was taking an oath, but there must be some outward act from which that consciousness can be definitely inferred. That cannot be done from the mere signature to a printed form of an oath.[5]

In *McKnight v. State Land Board*,[6] the Court cited *Spangler* with approval and further set out the essentials of an oath:

1. A solemn declaration.
2. Manifestation of an intent to be bound by the statement.
3. Signature of declarer.
4. Acknowledgment by an authorized person that oath was taken.[7]

▇▇▇ The foregoing precedents set by this Court require a formal verbal affirmation in order for a statement to be validly sworn to.[8] We thus conclude that since the patrolman failed to verbally affirm or swear[9] to the validity of the contents of the report, the report was not validly sworn to. In light of the holding in *Hel-*

*sten*, the revocation proceedings therefore were a legal nullity.

In light of this holding, we need not reach the issue of laches. The judgment of the district court is reversed.

HOWE and DURHAM, JJ., concur.

OAKS, Justice (dissenting):

In *Helsten v. Schwendiman*, Utah, 668 P.2d 509 (1983), we set aside the revocation of a driver's license (two justices dissenting) because the officer's report, which stated that the driver was under the influence of alcohol and refused to take the breathalyzer test, "was not signed in the presence of a notary . . . ." *Id.* at 512. In the present case, the officer signed the report in the presence of a notary. However, the majority holds that the officer's signature did not result in the required "sworn report" because he did not "affirmatively swear to that report" since he "failed to verbally affirm or swear to the validity of the contents of the report" while he was before the notary. Consequently, the majority holds, the subsequent proceedings are void.

This holding is apt to cause incalculable complications in the administration of criminal and civil law. To cite only three examples, our statutes require documents that are "sworn" or "on oath" to obtain a search warrant, U.C.A., 1953, § 77–23–3, to commence a criminal prosecution, § 77–35–4(a), or to file a mechanic's lien, § 38–1–7. Are the results of these proceedings subject to invalidation upon showing that the initiating person merely signed the document before a notary, as in this case? If not, what is the distinction between this case and those?

---

3. *See, e.g., Blackburn v. Motor Vehicles Div.*, 33 Or.App. 397, 576 P.2d 1267 (1978); *State v. Lewis*, 85 Wash.2d 769, 539 P.2d 677 (1975).

4. 104 Utah 584, 140 P.2d 755 (1943).

5. *Id.* at 758.

6. 14 Utah 2d 238, 381 P.2d 726 (1963).

7. *Id.* at 734.

8. *See also Wilcox v. Billings*, 200 Kan. 654, 438 P.2d 108 (1968) (failure of police officer to formally swear rendered proceedings invalid); *Dawson v. Austin*, 44 Mich.App. 390, 205 N.W.2d 299 (1973) (failure to raise right hand and swear to authenticity of information in report rendered revocation proceedings invalid).

9. *See* U.C.A., 1953, § 68–3–12(2).

The clear weight of authority declines to apply the kind of technicality the majority implements in this case. The reasoning in *Atwood v. State*, 146 Miss. 662, 111 So. 865, 51 A.L.R. 836 (1927), quoted with approval in *State v. Douglas*, 71 Wash.2d 303, 310, 428 P.2d 535, 539 (1967), is illustrative:

> The affiant went to the justice of the peace for the avowed purpose of obtaining a search warrant, and the justice of the peace knew that he came for that purpose. Both of them knew that an oath was necessary to be administered before the warrant could be issued, and with that knowledge each of them did what he considered proper for the administration of the oath. The affiant, in the presence of the justice of the peace, signed the affidavit; the justice of the peace thereupon affixed his jurat thereto, and issued the search warrant in proper form. *Although not a word was said by either in reference to an oath, they both knew an oath was necessary and both intended that the necessary thing should be done in order to obtain the search warrant. We think, by construction, what occurred amounted to the taking of the necessary oath by the affiant. One may speak as plainly and effectually by his acts and conduct as he can by word of mouth.* It follows from these views that the trial court committed no error in admitting the evidence obtained by the search warrant.

(Emphasis added.)

The foregoing reasoning was applied to the precise circumstance of this case—a sworn report in an alcohol-related driver's license suspension proceeding—in *Blackburn v. Motor Vehicles Division*, 33 Or. App. 397, 576 P.2d 1267 (1978). Both *Blackburn* and *Douglas* cite numerous other state court decisions to the same effect.

The majority in the instant case relies principally on *Spangler v. District Court*, 104 Utah 584, 140 P.2d 755 (1943). I submit that this case is not authoritative for the majority's result. The opinion is ambiguous. Subsequent decisions of this Court discredit or overrule it. And, as applied to the facts of this case, the *Spangler* rule is wrong in any event.

In this case, the officer complied with the test the majority quotes from *Spangler*: by appearing and signing a written oath in the presence of a notary, the officer committed an "outward act" from which we may infer his "consciousness ... that he was taking an oath ...." 104 Utah at 591, 140 P.2d at 758. However, the *Spangler* opinion says later that "the mere appearing before the justice and signing a criminal complaint does not constitute swearing to it, and therefore the complaint under the foregoing statute was not a valid one...." 104 Utah at 592, 140 P.2d at 758. I respectfully submit that this aspect of *Spangler* is wrong, as is evident from the way that case has been discredited by subsequent decisions of this Court.

In *State v. Mathews*, 13 Utah 2d 391, 375 P.2d 392 (1962), a deputy county recorder convicted of misusing public moneys sought to have his conviction reversed for failure to prove that he was a public official. The defendant relied on the absence of evidence that he had taken the required oath of office, citing the *Spangler* case. While conceding that "certain statements contained in that opinion might seem to lend comfort to defendant," 13 Utah 2d at 393, 375 P.2d at 393, this Court rejected defendant's argument and affirmed his conviction. The holding on this point is directly applicable to the present case:

> To hold, in the instant case, that the defendant's conviction should be set aside merely because the State did not show with conclusiveness that the defendant went through some formal ritual, with the raising of his right hand, in taking the oath would be a travesty and permit a super technicality to defeat the ends of justice.

*Id.*, 375 P.2d at 393.

In *McKnight v. State Land Board*, 14 Utah 2d 238, 381 P.2d 726 (1963), cited by the majority in this case, this Court held the oath to be valid. The Court's reasoning, as well as its holding, establishes that

the officer's report was properly "sworn" in the present case. *McKnight* involved the validity of a sworn application filed with the State Land Board. The affiant signed the applications before a notary *in blank.* Later, on February 2, 1962, while the affiant was in Denver, the applications were completed by affiant's agent and presented to the notary, who notarized them as "Subscribed and sworn to before me this 2nd day of February, 1962 at Salt Lake City, Utah." The Court found that the affiant "did not subscribe and swear to said applications on said date; but he did confer with [the notary] by telephone at various times on said date" about the applications. 14 Utah 2d at 241, 381 P.2d at 728.

Relying on the *Spangler* case, the adversary contended that the oath was invalid and therefore the applications were invalid. In rejecting that contention, this Court specified the duties of the officer administering the oath: "[H]e is required to know and state [that] the person who took the oath did declare himself to be the person mentioned in the oath, and ... he manifested an intention to be bound by it." 14 Utah 2d at 249, 381 P.2d at 733. Next, the Court listed the essentials of an oath, as quoted by the majority in this case. Immediately thereafter, the Court added this caution: *"The administration [of the oath] need not follow any set pattern. The ritual is of secondary importance and does not affect the validity of the oath." Id.,* 381 P.2d at 734 (emphasis added).

The administration of the oath in the instant case met all of the requirements defined in the *McKnight* case. If the oath was proper on the facts of that case—as this Court held—then the sworn statement in this case is valid also.

To turn back the clock to the literal language in *Spangler*—as the majority does—exalts a technicality beyond all reasonable limits and establishes a principle that will haunt the administration of every criminal and civil proceeding that relies on oaths or sworn statements. Such a holding is unnecessary because subsequent opinions in

*Mathews* and *McKnight* have erased that technicality. It is unwise because it serves no useful purpose. I would rely on our most recent cases and affirm the judgment of the district court.

STEWART, J., concurs in the dissenting opinion of OAKS, J.