Garry W. MICKELSEN, d/b/a Mickelsen Excavating & Construction, Inc., and Mickelsen Excavating & Construction, Inc., Plaintiff and Appellant,

v.

CRAIGCO, INC., a Utah corporation, Sherwood & Roberts, Inc., a Washington corporation, and Dan R. Fogle, and John Does 1–10, Defendants and Respondents.

No. 19945.

Supreme Court of Utah.

Jan. 11, 1989.

Wendell E. Bennett, Salt Lake City, for plaintiff and appellant.

David Dolowitz, Salt Lake City, for Craigco.

Bruce A. Maak, Salt Lake City, for Sherwood & Roberts.

HOWE, Associate Chief Justice:

Plaintiff Garry W. Mickelsen brought this action to foreclose a mechanic's lien which he had recorded against the River Oaks subdivision owned by defendant Craigco, Inc. Defendant Sherwood & Roberts, Inc., which was the beneficiary of a trust deed on the subdivision, moved for summary judgment on three grounds: (1) that plaintiff's foreclosure action had not been timely commenced; (2) that plaintiff's recorded notice of lien was invalid because it had not been properly verified; and (3) that no work had been done in the subdivision and no materials had been furnished as required by Utah Code Ann. § 38–1–5

(1988) prior to the recording of Sherwood & Roberts' trust deed so as to give plaintiff's mechanic's lien priority over the trust deed. The trial court granted summary judgment in favor of Sherwood & Roberts on the first ground. Plaintiff appeals.

In July 1978, Craigco began development of the subdivision. In October 1978, a boundary survey was made by a surveyor, who set more than twenty stakes in the ground. Later, there was additional surveying and setting of over two hundred stakes to mark the center line of proposed roads as well as water, sewer, and storm sewer lines. In April 1979, plaintiff dug six test holes for soil and water studies. Plaintiff claims that before the end of 1979, the proposed roads were rough cut, the land was "cleared and grubbed," and an old dairy barn and corrals were demolished and removed from the property. On December 28, 1979, Sherwood & Roberts made a loan to Craigco which was secured by a trust deed on the property which was recorded on that date.

During 1980 and up to about August 28, 1981, plaintiff furnished labor and materials to install the water lines, sewer lines, and storm sewer lines. Three times during the course of his work, plaintiff, at the request of Craigco, suspended work for thirty days or more. The periods of suspension of work were August 22 through October 2, 1980; November 1, 1980, through January 2, 1981; and March 13 through July 26, 1981. On September 30, 1981, plaintiff recorded a notice of mechanic's lien on the property to secure the payment of over $62,000 which was then past due. On April 29, 1982, he commenced the instant action to foreclose that lien.

On motion for summary judgment by Sherwood & Roberts, it contended and the trial court agreed that plaintiff was required to bring any foreclosure action within twelve months after the suspension of any work and therefore plaintiff had no valid lien for work done by him prior to March 13, 1981, and any lien for work done after that date was junior to the trust deed.

Utah Code Ann. § 38–1–11 (1988) provides in part:

Actions to enforce the liens herein provided for must be begun within twelve months after the completion of the original contract, or the suspension of work thereunder for a period of thirty days.

We do not subscribe to the trial court's interpretation of section 38–1–11 because it runs contrary to this Court's decision in *Totorica v. Thomas,* 16 Utah 2d 175, 397 P.2d 984 (1965). In that case, we interpreted the literal conjunctive language of the statute "that the action must be commenced within twelve months after the completion of the original contract, *or* the suspension of work thereunder for a period of thirty days" as affording the lien claimant a choice. That is to say, "a lien claimant may bring an action within twelve months after the completion of his contract, or, if he wishes, bring it within twelve months after there has been a suspension of work for a period of thirty days." *Totorica,* 16 Utah 2d at 178, 397 P.2d at 986–87.

The rationale for our decision in *Totorica* is that the mechanic's lien law was enacted for the benefit of those who perform the labor and supply the materials and that the lien claimant's remedy should not be limited without a clear mandate from the legislature requiring such an effect. We therefore conclude that plaintiff commenced his action to foreclose his lien within the time afforded by section 38–1–11.

Defendant next contends that the notice of lien filed by plaintiff was invalid since he admittedly did not make an oral averment as to the truthfulness of its contents to the notary public before whom he appeared. Utah Code Ann. § 38–1–7 (1974) required at the time the notice of lien here was recorded, on September 30, 1981, that the contents of the claim "must be verified by the oath of [the claimant] or of some other person." [1]

Our decided cases do not appear to be entirely harmonious as to what is required for a proper verification. In one of the earliest cases on the subject, *Spangler v.*

*District Court of Salt Lake County,* 104 Utah 584, 140 P.2d 755 (1943), we stated that evidence that the affiant was conscious he was taking an oath cannot be inferred from his signature on a printed form; therefore, his mere signature to a printed form was not sufficient to constitute an oath. We later relied on that language in *Spangler* to hold invalid an affidavit signed by a patrolman in the presence of a notary when the patrolman had not verbally sworn to its contents. *Colman v. Schwendiman,* 680 P.2d 29 (Utah 1984). Two justices dissented, stating that the majority holding was against the "clear weight of authority." See also *White v. Heber City,* 82 Utah 547, 26 P.2d 333 (1933), where in dicta we seemed to require the administration of an oath to an affiant and an oral averment as to the truthfulness of the document.

Between our decisions in *Spangler* and *Colman,* we decided two cases in which the strict requirements of *Spangler* were not adhered to. In *State v. Mathews,* 13 Utah 2d 391, 375 P.2d 392 (1962), we held that no formal ritual with the raising of the right hand was necessary and that a deputy county recorder who only signed a printed oath before a notary was a *de jure* officer. We later held that the administration of the oath need not follow any certain pattern and that the ritual is of secondary importance. *McKnight v. State Land Board,* 14 Utah 2d 238, 381 P.2d 726 (1963). In that case, the affiant signed an application form in blank in the presence of a notary. Later, while out of the state, he conferred with the notary in Utah by phone. The notary then completed the application and affixed his jurat that the application had been "[s]ubscribed and sworn to before me this 2nd day of February, 1962, at Salt Lake City, Utah," although the affiant was out of the state on that date. We upheld the verification.

A survey of cases from other jurisdictions reveals that many of them do not require that the affiant raise his hand or

---

1. The legislature amended this statute in 1985 to delete the requirement of verification. *See* Utah Code Ann. § 38–1–7 (1988).

speak any words in order to have a valid verification. Those cases hold that the signing of a form of affidavit in the presence of a notary or an official authorized to administer an oath is sufficient. *Blackburn v. Motor Vehicles Division*, 33 Or. App. 397, 576 P.2d 1267 (1978), and cases cited and discussed therein. In order to end the confusion in our case law, we join those jurisdictions and the dissenters on our own Court in *Colman v. Schwendiman*. We adopt as our rule that for a valid verification,

> (1) there must be a correct written oath or affirmation, and (2) it must be signed by the affiant in the presence of a notary or other person authorized to take oaths, and (3) the latter must affix a proper jurat.

There is no minimum requirement that an oath must be administered to the affiant or that the affiant must speak an oral oath or affirmation or raise his or her hand. We overrule *Colman v. Schwendiman* and *Spangler v. District Court of Salt Lake County* to the extent that they conflict with this new rule. However, our decision today in no way disturbs *First Security Mortgage Corp. v. Hansen*, 631 P.2d 919 (Utah 1981), where the form of verification was deficient, and *Graff v. Boise Cascade Corp.*, 660 P.2d 721 (Utah 1983), where the verification form, though proper, was not properly executed. Nor do we depart in any way from our case law requiring substantial compliance with the statutory requirements of the contents of a notice of mechanic's lien. *Roberts Investment v. Gibbons & Reed Concrete Products*, 22 Utah 2d 105, 108, 449 P.2d 116, 118 (1969); *Park City Meat Co. v. Comstock Silver King Mining Co.*, 36 Utah 145, 154, 103 P. 254, 257 (1909). Likewise, *Helsten v. Schwendiman*, 668 P.2d 509 (Utah 1983), where the affiant did not personally appear before the notary, and *Baker v. Schwendiman*, 714 P.2d 675 (Utah 1986), where the affiant was not formally put under oath by the notary, remain good law.

In the instant case, the form of verification on the notice of mechanic's lien recorded by plaintiff was properly worded so that by signing it, plaintiff swore to the truthfulness of the contents of the notice of lien.[2] The verification was signed in the presence of a notary, and the notary affixed a proper jurat. We therefore find that the notice of lien was properly verified.

We note that in early 1988 after the instant case had been argued and submitted to this Court, the legislature amended our statutes governing notaries public and enacted the "Notaries Public Reform Act." Utah Code Ann. § 46–1–1 through –17 (1988). Since that enactment came long after the rights of the parties to this action arose, we express no opinion as to whether any of the provisions of that Act impinge upon our decision here.

Defendant's third ground for its motion for summary judgment was that the work which was done in the subdivision by plaintiff and other mechanics prior to the recordation of defendant's trust deed, the work relied on by plaintiff in bringing his claims of priority over the trust deed, was insufficient to satisfy the requirements of section 38–1–5. The trial court did not reach this issue. It involves factual determinations which must now be made. We therefore reverse the summary judgment and remand this case to the trial court for that determination and any others necessary for final disposition.

STEWART, J., concurs.

ZIMMERMAN, Justice (concurring):

I join the majority in departing from our decisions in *Colman v. Schwendiman*, 680 P.2d 29 (Utah 1984), and *Spangler v. District Court of Salt Lake County*, 104 Utah 584, 140 P.2d 755 (1943), although not without some reluctance. I would have been

---

2. The verification on the notice of lien form states: "[          ] being first duly sworn, says that he is claimant in the foregoing Notice of Lien; that he has heard/read said notice and knows the contents thereof, and that the same is true of his own knowledge. [Signed,] subscribed and sworn to before me this _____ day of _____, 19 ___ [notary's signature and seal]."

content to reaffirm *Colman* and *Spangler* on principles of stare decisis, affirm the decision below, and suggest that the legislature clear up this area of the law. However, because a majority of the Court is willing to reject *Colman* and *Spangler*, I join it, but add a comment about the state of the law in this area.

The question of the formalities required in the execution of documents is one upon which the legislature has spoken repeatedly, albeit with no apparently coherent overarching principles in mind.[1] Different statutes use different terminology in describing the formalities they require. While our decision today indicates that we will not be as literal in demanding compliance with these formalities as we were in *Colman* and *Spangler*, we cannot eliminate those antiquated and apparently unnecessary statutory formalities and bring consistency and clarity to this area by judicial fiat. As a consequence, and despite our opinion today, it is possible, as Justice Oaks stated in dissent in *Colman*, that many routine real estate and other transactions completed in the state of Utah on a day-to-day basis may fail to comply with the technical mandates of the statutes that govern them and, as a result, may be subject to attack.

I agree with the policy judgment that underlies the majority opinion: there is little reason to require these technicalities in this day of simplified practice and procedure. However, a complete remedy for the problems created by these statutes would be the legislature's enactment of a law repealing technical swearing requirements in all statutes and substituting the simple requirement that the documents or statements in question be signed or made under penalty of perjury.[2] It is a common procedure that has long been employed elsewhere. *See, e.g.,* 28 U.S.C. § 1746 (1982). Such legislation, if made retroactive, would remedy any latent defects in existing documents.

It is to be hoped that by adopting the position taken today and obviating some of the most unsettling consequences of the *Colman* and *Spangler* approach, we have not induced the Bar and the legislature to believe that the problem has been finally laid to rest. It would be most unfortunate

---

1. *See, e.g.,* Utah Code Ann. § 38–1–7 (1974) (mechanic's lien claims were required to "be verified by the oath of [the claimant] or some other person" prior to amendment); *id.* § 38–1–7(2)(e) (1988) (mechanic's lien claims must now simply be signed by the claimant or an authorized agent); *id.* § 40–3–2 (1988) (person authorized to weigh coal must "take and subscribe an oath to keep the scales correctly balanced, to accurately weigh, and to correctly record the gross or screened weight, to the nearest ten pounds, of each miner's car of coal delivered"); *id.* § 40–3–3 (1988) (miners' agent appointed to double-check coal weighing must "take and subscribe an oath that he [or she] is duly qualified and will faithfully discharge the duties of check-weigh[er]"); *id.* § 41–6–44.10(b) (1982) (prior to amendment, peace officers were required to submit sworn reports concerning drivers arrested for driving under the influence who refused to submit to chemical tests); *id.* § 41–6–44.10(2)(a)(iii) (1988) (today, officers need only sign DUI reports); *id.* § 53B–5–107(1) (Supp.1987) (proprietary school registration statements "shall be verified by the oath or affirmation of the owner or a responsible officer"); *id.* §§ 57–2a–2, –7 (Supp.1988), 57–2–7 (1986) (any written instrument affecting title to real property and any other document that requires notarization must bear a certificate showing that the signer acknowledged exe-

cuting it; if the instrument was executed by an agent for an entity or an individual, the agent must make a sworn statement or provide other proof of agency authority); *id.* § 77–23–3(1) (1982) ("A search warrant shall not issue except upon probable cause supported by oath or affirmation...."); *id.* § 77–35–4(a) (1982) (Utah R.Crim.P. 4(a)) ("[O]ffenses shall be prosecuted by indictment or information sworn to by a person having reason to believe the offense has been committed.").

2. The legislature has repealed the technical swearing requirements construed in *Colman*, *Spangler*, and this case. *See* Utah Code Ann. §§ 41–6–44.10(2)(a)(iii), 38–1–7(2)(e) (1988). In light of the statutes cited previously, *see supra* note 1, statute-by-statute repeal is not only needlessly complex and confusing, but it is also inadequate for three reasons. First, many hypertechnical requirements have not been repealed. Second, the repeals that have occurred do not appear to be retroactive. Third, the requirement of signing subject to the penalties for perjury does not appear to have been substituted for the repealed provisions.

The legislature has adopted the approach that I am advocating in the limited context of the Utah Uniform Probate Code. *See* Utah Code Ann. § 75–1–309 (1978). Thus, the approach appears to be acceptable to the legislature.

if our action today served only to postpone a truly effective and thoroughgoing legislative remedy.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.

HALL, Chief Justice (concurring and dissenting):

I join the Court in following precedent which interpreted Utah Code Ann. § 38–1–11 as permitting a lien claimant to bring an action within twelve months after the completion of a contract or, alternatively, within twelve months after there has been a suspension of work for a period of thirty days.[1] However, I do not join the Court wherein it fails and refuses to follow likewise good precedent which invalidates the notice of a mechanic's lien which is not verified under oath.

Utah Code Ann. § 38–1–7 (Supp.1981) (amended 1985 and 1987) specifically required that the contents of a mechanic's lien be verified under oath. In addition, prior to 1988 any instrument in writing which affected the title to real property required the formality of an oath.[2]

The underlying policy considerations for the requirement of verification are as stated in *First Security Mortgage Co. v. Hansen:*[3]

A lien creates an encumbrance on property that deprives the owner of his ability to convey clear title and impairs his credit. The filing of a lien for an excessive amount could be used to force a settlement unfairly weighed in favor of the claimant. Such abuse is made a misdemeanor by § 38–1–25. These serious consequences justify the statutory imposition of a requirement that one who makes the claim must furnish a sworn statement to the truthfulness of the facts giving rise to it. Frivolous, unfounded, and inflated claims can thereby be minimized, and the prejudgment property rights of the individuals receive their due protection.[4]

Thereupon, we concluded that verification is a mandatory condition precedent to the very creation and existence of a lien.

In *Graff v. Boise Cascade Corp.,*[5] we observed that the doctrine of substantial compliance has application in an appropriate case, but that the lack of verification is not a hypertechnicality that the Court is free to discount. Accordingly, in *Helsten v. Schwendiman,*[6] we held that a police officer's failure to sign his sworn report under oath in the presence of a notary public constituted a lack of verification. Similarly, in *Colman v. Schwendiman,*[7] we held that a formal verbal affirmation is required in order for a statement to be validly sworn to.[8]

In the instant case, plaintiff's own testimony was that he executed the notice of lien without being placed under oath and did not recite under oath any of the matters stated in the notice before the notary who placed her signature and notarial seal on the instrument. Without such verification, no lien was created.

I would affirm the judgment of the trial court, albeit on these different grounds.

---

1. *Totorica v. Thomas,* 16 Utah 2d 175, 397 P.2d 984 (1965).

2. Utah Code Ann. §§ 57–2–1, –7 (1986) (repealed 1988).

3. 631 P.2d 919 (Utah 1981).

4. *Id.* 631 P.2d at 922; *see also Graff v. Boise Cascade,* 660 P.2d 721 (Utah 1983); *Colman v. Schwendiman,* 680 P.2d 29 (Utah 1984); *Helsten v. Schwendiman,* 668 P.2d 509 (Utah 1983).

5. 660 P.2d 721 (Utah 1983).

6. 668 P.2d 509 (Utah 1983).

7. 680 P.2d 29 (Utah 1984).

8. *Id.* at 31 (citing and relying upon *Spangler v. District Court of Salt Lake County,* 104 Utah 584, 140 P.2d 755 (1943); *McKnight v. State Land Board,* 14 Utah 2d 238, 381 P.2d 726 (1963)).