WORTHINGTON & KIMBALL CON-
STRUCTION COMPANY, a Utah gener-
al partnership, Gary Worthington and
Edwin N. Kimball, general partners,
Plaintiffs and Appellants,

v.

C & A DEVELOPMENT COMPANY, an
Arizona corporation, C & A Enterpris-
es, an Arizona partnership, First Inter-
state Bank of Arizona, N.A., Stewart
Title Company of Salt Lake City, C & A
Development Company, Inc., an Ari-
zona corporation, Permaloy Corpora-
tion, a Utah corporation, Otto Buehner
& Company, Holbrook Company, Inc.,
Donald K. Lybbert, dba Lybbert Ma-
sonry Company, Joseph Smith Plumb-
ing, Redd Roofing Company and John
Does 1 through 24, Defendants and Ap-
pellees.

WORTHINGTON & KIMBALL CON-
STRUCTION COMPANY, a Utah gener-
al partnership, Gary Worthington and
Edwin N. Kimball, general partners,
Plaintiffs and Appellees,

v.

C & A DEVELOPMENT COMPANY, an
Arizona corporation, C & A Enterpris-
es, an Arizona partnership, First Inter-
state Bank of Arizona, N.A., Stewart
Title Company of Salt Lake City, C & A
Development Company, Inc., an Ari-
zona corporation, Permaloy Corpora-
tion, a Utah corporation, Otto Buehner
& Company, Holbrook Company, Inc.,
Donald K. Lybbert, dba Lybbert Ma-
sonry Company, Joseph Smith Plumb-
ing, Redd Roofing Company and John
Does 1 through 24, Defendants and Ap-
pellants.

Nos. 20674, 20676.

Supreme Court of Utah.

July 7, 1989.

Robert F. Babcock, Salt Lake City, for Worthington & Kimball Const. Co.

Robert F. Bentley, Scottsdale, Ariz., for C & A Development Co. and C & A Enterprises.

Thomas A. Duffin, Salt Lake City, for Otto Buehner & Co.

LaVar E. Stark, Ogden, for First Interstate Bank of Arizona and Sec. Title Co.

HALL, Chief Justice:

These consolidated appeals stem from an action which arose out of the construction of a manufacturing plant. C & A Development and C & A Enterprises (hereinafter "C & A") failed to pay the general contractor, Worthington & Kimball ("Worthington"), the balance due on a construction contract. The claims of Worthington and the counterclaim of C & A were arbitrated pursuant to an arbitration agreement contained in the construction contract, and the board of arbitrators awarded Worthington $377,131 plus interest at 15 percent. Worthington sought confirmation of the arbitration award in the district court and foreclosure of its mechanic's lien on the subject property.

The trial court confirmed the arbitration award, except that it reduced the interest rate to 10 percent; the court granted a mechanic's lien of a subcontractor, Otto Buehner & Company ("Buehner"); the court denied foreclosure of Worthington's mechanic's lien, concluding that it was not properly verified and was therefore unenforceable; [1] and the court denied the claims

---

1. Pursuant to Utah Code Ann. § 38–1–7 (Supp. 1981) (amended 1985 & 1987). The 1985 amendment deleted the requirement of verification.

of C & A against Buehner, concluding that they were barred by collateral estoppel.

On appeal, Worthington seeks a determination by this Court that its mechanic's lien was in substantial compliance with the statutory requirement or, in the alternative, that the 1985 amendment to the statute which deleted the verification requirement be applied, which would validate the lien. Worthington also seeks reinstatement of the interest rate of 15 percent.

In its cross-appeal, C & A seeks a reversal and remand for the purpose of vacating the arbitration award and reinstatement of its cross-claim against Buehner.

I

The issue as to the validity of a mechanic's lien executed without the formality of an oath was recently resolved in *Mickelsen v. Craigco*,[2] wherein the Court concluded:

> We adopt as our rule that for a valid verification,
>
> "(1) there must be a correct written oath or affirmation, and (2) it must be signed by the affiant in the presence of a notary or other person authorized to take oaths, and (3) the latter must affix a proper jurat."[3]

■ There is no minimum requirement that an oath must be administered to the affiant or that the affiant must speak an oral oath or affirmation or raise his or her hand. However, in the instant case there was a complete failure to comply with requirement 2. The lien claimant did not sign a correct written oath in the presence of a notary. All that he signed was the notice of lien. It does not purport to contain an oath. Affixed below the claimant's signature the following certification appears:

STATE OF UTAH)
County of *Salt Lake*)

On this *13th* day of *January 1982*, Personally appeared before me Edwin N. Kmball [sic], who duly acknowledged to me that he has executed this notice and that he has read the contents thereof, that the same is true of his own knowledge.

*/s/ Arnold Allred*
Notary Public
residing at: *6586 W. 3500 S.*
(seal)
My Commission expires
18 Sept 85

■ The foregoing was not signed by the claimant, but was signed instead by the notary public. It is a certification by a notary public that the claimant acknowledged to him that he executed the notice of lien, that he had read the contents, and that the same were true. However, in order to have a valid verification it is the claimant, and not the notary, who must sign that the contents are true. While in *Mickelsen v. Craigco* we held that the notary did not need to administer an oath to the affiant and that the affiant need not speak an oral oath or raise his or her hand, we did require that the affiant sign a correct written oath so that he would be conscious that he was making a statement under oath. There is a complete failure of that requirement here where the claimant merely acknowledges to the notary that the contents of the notice of lien are true and then the notary certifies that the claimant has made that acknowledgment.

The acknowledgment here differs only slightly from one which we held insufficient as a verification in *First Security Mortgage Co. v. Hansen*.[4] There, a statutory corporate acknowledgment was used in lieu of a verification. We held that the corporate acknowledgment was insufficient as an oath to the truthfulness of the facts giving rise to the claim of lien. In the instant case, there was added to the statutory form of corporate acknowledgment the recitation that the claimant had read the contents of the notice of lien and that the same were true of his own knowledge. Had the claimant signed those statements, perhaps they would suffice as an affirmation. However, as pointed out above, the

---

2. 767 P.2d 561 (Utah 1989).

3. *Id.* at 564.

4. 631 P.2d 919 (Utah 1981).

fatal defect here is that the claimant did not sign anything under oath. He merely made acknowledgments and statements to the notary that the notary certified. This does not constitute a verification as required by statute.

█ Worthington also claims that the 1985 amendment to Utah Code Ann. § 38–1–7 (1981) deleting the requirement of verification by oath should apply retroactively to this case. Utah Code Ann. § 68–3–3 (1986) states, however, "No part of these revised statutes is retroactive, unless expressly so declared." The 1985 amendment does not expressly provide for retroactive application. Hence, it does not apply retroactively, and the trial court did not err in invalidating Worthington's lien.[5]

## II

The arbitration award of interest was couched in the following language:

> The contractor is entitled to interest at the rate of 15% per annum on the sum of $377,131.00 from December 1, 1981 until paid by owner. We select that rate in part as a measure of damages to Worthington & Kimball for the unreasonable withholding of the balance of the contract price.

The argument advanced is that such an award is on its face punitive and therefore inappropriate. However, we are not so persuaded.

█ The arbitrators explained their award of interest in excess of the legal rate as being the measure of damages. This is wholly consistent with and supported by the facts advanced at arbitration.

The contract between C & A and Worthington provides that unpaid sums due thereunder shall bear interest at the rate paid on the construction loan or at the legal rate, whichever is greater. In support of its claims for interest, Worthington submitted a summary of its interest calculations as an exhibit in the arbitration. The

average rate of interest reflected by the exhibit was 15.8 percent, which the arbitrators apparently rounded off to 15 percent in making their award. Thus, rather than being punitive, the 15 percent interest award amounts only to partial reimbursement of out-of-pocket interest payments.

█ The contract between the parties also provides that arbitration was to be conducted in accordance with The Construction Industry Arbitration Rules of the American Arbitration Association. Rule 43 thereof defines the scope of the award and provides that "[t]he arbitrator may grant any remedy or relief which is just and equitable and within the terms of the agreement of the parties." Therefore, the arbitrators did not exceed their authority by imposing a 15 percent interest award as a measure of the damages shown to have been incurred. In a like case, the Supreme Court of Hawaii concluded that what was labeled as interest was in fact compensation for damages and upheld the arbitration award.[6]

## III

█ Resolution of the issue of whether C & A's claims against Buehner are barred by the doctrine of collateral estoppel requires further amplification of the facts.

In the action filed by Worthington to enforce its mechanic's lien, Buehner counterclaimed for sums due from Worthington and also cross-claimed against C & A to enforce its mechanic's lien. C & A then cross-claimed against Buehner for damages as a third-party beneficiary of the subcontract between Worthington and Buehner and for the negligence of Buehner.

The arbitration proceeding betwen C & A and Worthington had previously been commenced, and Buehner was not a party to the arbitration and in fact refused to become a party.

The arbitration resolved only the contractual disputes between C & A and Worthington, and no effort was made to address C &

---

5. *Cf. Mickelsen v. Craigco,* 767 P.2d at 564 (amendments to notaries public statute not applied retroactively).

6. *Morrison–Knudsen Co. v. Makahuena Corp.,* 66 Haw. 663, 672, 675 P.2d 760, 767 (1983).

A's third-party beneficiary claim or negligence claim against Buehner.

The doctrine of collateral estoppel has no application in the absence of (1) a final judgement on the merits, and (2) an actual determination of the issues.[7]

 Buehner was not a party to the arbitration, nor was it a party to the contract which was the subject of the arbitration. In addition, Buehner refused to arbitrate the claims of C & A. Although public policy favors the arbitration of claims, one cannot be compelled to arbitrate claims.[8] It necessarily follows that arbitrators may not appropriately address matters not submitted to them for arbitration, and to the extent they may have done so in this case, their actions are without force and effect.

In sum, C & A's claims against Buehner remain to be adjudicated and are therefore not barred by the doctrine of collateral estoppel. We reverse on that issue and remand for further proceedings. We also reverse the trial court's reduction of the interest rate to 10 percent and reinstate the arbitrator's 15 percent award.

The remaining points on appeal have been duly considered and found to be without merit.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

7. *International Resources v. Dunfield,* 599 P.2d 515, 517 (Utah 1979).

8. *See generally Lindon City v. Engineers Constr. Co.,* 636 P.2d 1070 (Utah 1981).